Edward **GOOD** and Joy Good, Individually and as Next Friends of Logan Good, Plaintiffs,

v.

**ARAMCO SERVICES COMPANY** and Saudi Arabian Oil Company a/k/a Saudi Arabia, Defendants.

**Civil Action No. H–96–1205.**

United States District Court,
S.D. Texas,
Houston Division.

Feb. 13, 1997.

Roger R. Evans, Evans & Kosut, Houston, TX, for Edward Good, Joy Good.

William B. Welte, III, Aramco Services Legal Counsel, Houston, TX, for Aramco Services Company.

Robert Ellison Meadows, Gardere Wynne Sewell & Riggs, L.L.P., Houston, TX, for Saudi Arabian Oil Company.

### MEMORANDUM

HARMON, District Judge.

Pending before the Court are Saudi Arabian Oil Company's (Saudi Aramco) motion for reconsideration and motion for stay (instrument # 12) of the Court's August 8, 1996 order denying a motion to dismiss on the basis of foreign sovereign immunity (# 7) and motion for expedited resolution of its motion for stay (# 13).

The original state court petition alleges that in May 1991, Edward Good was recruited and hired by Defendant Saudi Aramco, the national oil company of Saudi Arabia, created by royal decree and wholly owned by the government of Saudi Arabia. The recruitment and hiring took place in Houston, Texas at the offices of Aramco Services Company ("ASC"), a subsidiary of Saudi Aramco. At that time Good alleges that Saudi Aramco represented that its medical facilities in Saudi Arabia were equal to or better than those in the United States and that Good's employment agreement with Saudi Aramco included medical care at these facilities. The medical care facilities were a matter of concern to Good because his wife was pregnant. The Goods arrived in Dhahran, Saudi Arabia on December 21, 1991. Mrs. Good was admitted into the company hospital with contractions on February 29, 1992. During the second stage of her labor, there were problems, and the Good's son Logan was born brain damaged. The Goods allege that they did not become fully aware of the extent of Logan's injury at the time because Saudi Aramco continually refused to provide requested medical information, and the resulting delay in enrolling Logan in therapy and treatment programs was further detrimental to their son. Finally, the Goods allege that after continually representing that it could provide all necessary care for Logan, in early June 1995 Saudi Aramco informed the Goods that appropriate care and treatment were not

available in Saudi Arabia and that the Goods would have to "fend for themselves." Plaintiffs seek damages for Logan's physical pain and mental anguish, reasonable and necessary medical expenses, mental impairment, Logan's loss of society, of the enjoyment of life, of familiar relationships, Logan's psychological or psychiatric impairment, Edward and Joy Good's loss of companionship and impairment of love and affection, and Edward Good's loss of opportunity and of income due to restricted employment opportunities.

This case was removed from state court under 28 U.S.C. § 1441(d), which provides foreign states with an absolute right to remove cases brought against them in state court. On August 8, 1996, this Court denied Saudi Aramco's motion to dismiss for lack of subject matter jurisdiction. Saudi Aramco moves for reconsideration, reasserting its immunity from suit as an agency or instrumentality of the government of the Kingdom of Saudi Arabia under the Foreign Sovereign Immunities Act of 1976 ("FSIA"). Public Law No. 94–583, 90 Stat. 2892, codified as amended at 28 U.S.C. §§ 1330, 1332(a), 1391(f), 1441(d), 1602–1611. FSIA is the only basis for obtaining jurisdiction over a foreign government in the courts of the United States. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443, 109 S.Ct. 683, 693, 102 L.Ed.2d 818 (1989). The existence of subject matter jurisdiction under the FSIA is a question of law for the Court to decide. *Stena Rederi AB v. Comision de Contratos del Comite*, 923 F.2d 380, 386 (5th Cir.1991), *citing America West Airlines, Inc. v. GPA Group Ltd.*, 877 F.2d 793, 796 (9th Cir.1989). Saudi Aramco contends that initially it was only required to make a *prima facie* showing of its status as an entity within the ambit of the FSIA and that it had no burden at that juncture to prove that the statutory exceptions to immunity do not apply. *Stena Rederi*, 923 F.2d at 390 n. 14. The foreign state is presumptively immune under the Act. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355, 113 S.Ct. 1471, 1476, 123 L.Ed.2d 47 (1993). After the *prima facie* showing the burden of proof then shifts to the plaintiff to identify the exceptions to immunity upon which the plaintiff relies and to present some facts that show an exception exists. If the plaintiff satisfies this burden of production, the foreign state entity then must satisfy its ultimate burden of persuasion by demonstrating the nonapplicability of the exceptions raised by the plaintiff. *Stena Rederi*, 923 F.2d at 389; *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 533–534 (5th Cir.), *cert. denied*, 506 U.S. 956, 113 S.Ct. 413, 121 L.Ed.2d 337 (1992); *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 289 n. 6 (5th Cir.1989).

It is undisputed that Saudi Aramco is an agency or instrumentality of the Kingdom of Saudi Arabia under § 1603(b), entitled to immunity from the jurisdiction of the United States courts, provided that one of the limited exceptions established in § 1605 of the FSIA does not apply. Plaintiffs have asserted that all three clauses of the commercial activities exception under § 1605(a)(2) and waiver under § 1605(a)(1) apply under the circumstances of this case.

Saudi Aramco argues they do not.

In its motion to reconsider Saudi Aramco maintains that it is now entitled to the opportunity to show that the exceptions raised by Plaintiffs do not apply. The Court will reconsider the motion and examine the arguments raised in Saudi Aramco's motion to dismiss, in its reply to Plaintiffs' response, and in its motion to reconsider.

## THE COMMERCIAL ACTIVITY EXCEPTION

The commercial activity exception of § 1605(a)(2) provides:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

. . . .

(2) in which the action is based upon [1] a commercial activity carried on in the United States by the foreign state; or [2] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or [3] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and

that act causes a direct effect in the United States[.]

The three clauses are distinct, juxtaposed against each other, and thus indicate different bases for jurisdiction. *Nelson,* 507 U.S. at 357–358, 113 S.Ct. at 1477–1478.

■ The FSIA defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). Commercial activity includes contract negotiations and contract obligations. *Callejo v. Bancomer, S.A.,* 764 F.2d 1101, 1108–09 (5th Cir. 1985). Plaintiffs contend and there is little question that in this case Saudi Aramco's activities are not sovereign, but are commercial activities within the meaning of FSIA. Recruiting and hiring employees in the United States by a foreign government is an activity commercial in nature. *Cf. Zveiter v. Brazilian Nat'l Superintendency,* 833 F.Supp. 1089 (S.D.N.Y.1993). Justice White stated in his concurring opinion in *Nelson,* 507 U.S. at 365, 113 S.Ct. at 1481, "To run and operate a hospital, even a public hospital, is to engage in a commercial enterprise."

Plaintiffs claim the Court has jurisdiction under clauses one, "a commercial activity carried on in the United States by the foreign state," and two, "an act performed in the United States in connection with a commercial activity of the foreign state elsewhere." They point to the routine recruitment of employees in the United States by Saudi Aramco to assist in the production, refining, and marketing of its oil in Saudi Arabia. This recruitment involves an orientation program, including a presentation about Saudi Aramco's medical facilities. The operation of medical facilities in Dhahran, Saudi Arabia is a commercial activity. The Goods argue that ASC and Saudi Aramco's actions in promoting their medical capabilities as part of an employment package and their entering into an agreement of employment with Edward Good in the United States, were commercial activities that induced the Goods to relocate.

■ In § 1605(a)(2), *supra,* the phrase, "based upon," has been construed narrowly to refer to "those elements of a claim, that, if proven, would entitle a plaintiff to relief under his theory of the case." *Nelson,* 507 U.S. at 357, 113 S.Ct. at 1477, *citing Callejo,* 764 F.2d 1101, 1109 (5th Cir.1985). Under the first two clauses of § 1605(a)(2), Plaintiffs must establish a material connection between their causes of action and Saudi Aramco's commercial activity in the United States. *Stena,* 923 F.2d at 387. The focus must be on "whether the particular conduct giving rise to claim in question actually constitutes or is in connection with commercial activity. ...." *Arango v. Guzman Travel Advisors Corp.,* 621 F.2d 1371, 1379 (5th Cir.1980). Commercial actions by a foreign sovereign in the United States that are isolated or unrelated to the plaintiffs claims do not authorize application of the commercial activities exception. *Stena,* 923 F.2d at 387.

Plaintiffs identify as the activities forming the basis of their claim (1) Defendants' recruiting and hiring practices conducted in Texas, including representations and dissemination of information about health care services; (2) provision of medical services by Saudi Aramco; (3) withholding of information by Saudi Aramco personnel of information about Logan Good's condition.

Saudi Aramco argues that of the three activities forming the basis of Plaintiffs' claims, two, *i.e.,* provision of medical services and withholding of information regarding Logan Good's condition, occurred entirely in Saudi Arabia. Plaintiffs have alleged that but for the commercial activities of recruitment and hiring performed in the United States, they would not have gone to Saudi Arabia, where their son was born and later suffered injury. Saudi Aramco responds that the Supreme Court rejected a similar claim in *Nelson,* 507 U.S. at 358, 113 S.Ct. at 1478.

In the *Nelson* case the plaintiffs argued that the first clause of § 1605(a)(2) applied and that but for the recruiting actions in the United States, Nelson's imprisonment and torture by the Saudi Arabian police would not have occurred. The majority of the United States Supreme Court held that given the narrow construction of "based upon," none of the three clauses of the commercial activity exceptions applied to the recruiting

claim since the suit was not based upon any commercial activity by the defendants, but upon the defendants' actions as the sovereign. The Supreme Court began its analysis, as must this court, by identifying the particular conduct on which the plaintiff's action was based for purposes of the Act. The Court points out that there is in the Act no definition of the phrase "based upon," and the legislative history offers no assistance. Nevertheless, the Supreme Court pointed out that guidance was "hardly necessary," since reference to both Black's Law Dictionary and the Random House Dictionary, revealed a natural reading of the phrase to be "those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." 507 U.S. at 357, 113 S.Ct. at 1477. The majority of the Court, rather too simplistically for Justice White concurring,[1] went on to hold that the case was one for intentional torts inflicted by the sovereign and that it made no difference that they were inflicted in a commercial context. In passing the majority points out that

> "The Nelsons have not, after all, alleged breach of contract ..., but personal injuries caused by petitioners' intentional wrongs and by petitioners' negligent failure to warn Scott Nelson that they might commit those wrongs. Those torts, and not the arguably commercial activities that preceded their commission, form the basis for the Nelsons' suit."

507 U.S. at 358, 113 S.Ct. at 1478.

It is through this "loophole" in the *Nelson* case that the plaintiffs here seek to draw their suit.

The Goods maintain that Saudi Aramco's reliance on *Nelson* is misplaced because of significant factual differences concerning the recruitment activities, the nature of the employment, and the intentionally tortious acts. The Goods also argue that in *Nelson*, none of the plaintiffs' claims were based on elements occurring in the United States. Here, in contrast, they claim, Saudi Aramco recruited and hired personnel through Houston-based ASC, which performs many functions for Saudi Aramco and operates at the direction and control of Saudi Aramco. Plaintiffs reiterate

that the contract of employment was entered into by Saudi Aramco and Edward Good in the United States, and the promises and representations about medical care in Saudi Arabia, upon which Good relied to his detriment, were made in the United States. Plaintiffs also argue that the medical care and financial responsibility of Saudi Aramco were material inducements in Good's decision to enter into the employment relationship. Plaintiffs maintain their other claims have their genesis in and are based upon the contract creating the employment relationship. Rather than alleging medical malpractice, the Goods allege breach of contract and contract related misrepresentations.

### 1. Clauses One and Two

Saudi Aramco insists that although the Goods cast their claims as ones stemming from the employment contract, the Goods' causes of action are neither based upon a "commercial activity" carried on in the United States (clause one of § 1605(a)(2)), nor based upon an act in the United States in connection with commercial activity elsewhere (clause two § 1605(a)(2)) and therefore cannot be the basis for an exception to immunity. It is the alleged medical negligence in Saudi Arabia that caused tortious injury to Plaintiffs' son and not the recruiting, hiring, and contracting activities in the United States. These tort allegations are the "elements of a claim, which, if proven, would entitle [Plaintiffs] to relief under [their] theory of the case." *Nelson*, 507 U.S. at 357, 113 S.Ct. at 1477. The damages the Goods seek, i.e. physical pain, mental anguish, medical expenses, physical and mental impairment, loss of society, etc. are typical of malpractice, not of contract claims. Finally, Saudi Aramco argues that the Plaintiffs cannot change the nature of their claims by characterizing them as ones sounding in contract. *Woodburn v. Turley*, 625 F.2d 589, 592 (5th Cir. 1980) (malpractice actions against attorneys sound in tort, "regardless of how a plaintiff may frame his complaint"); *Kozan v. Comstock*, 270 F.2d 839, 845 (5th Cir.1959)(malpractice action is tortious in nature, whether

---

1. *Cf.* 507 U.S. at 367, 113 S.Ct. at 1482–83.

the duty grows out of a contractual relationship or not); *Willis v. Maverick*, 760 S.W.2d 642, 644 (Tex.1988) (malpractice cases sound in tort). The Plaintiffs imaginative attempts to analogize this to a products liability case simply do not serve to take this case out of the malpractice realm.

Saudi Aramco argues that the Plaintiffs assume that the same activity *i.e.*, the creation of an employment relationship, which includes the recruiting in the United States, that allegedly provided jurisdiction under clause one, also serves as a basis for jurisdiction under clause two, but as with clause one, Plaintiffs' causes of action are not "based upon" its recruiting activity in the United States. For clause two jurisdiction, that act must in and of itself be "sufficient to form the basis of a cause of action." H.R.Rep. No. 1487, 94th Cong.2d Sess. 19, reprinted in 1976 U.S.C.A.A.N. 6604, 6618; *Zedan v. Kingdom of Saudi Arabia*, 849 F.2d 1511, 1514 (D.C.Cir.1988) (telephone call recruiting plaintiff to work in Saudi Arabia did not provide jurisdiction under clause two where the cause of action was based on an act that subsequently occurred in Saudi Arabia).

The Goods' position is that the clause two activity conducted by Saudi Aramco was the misrepresentation concerning medical facilities in Saudi Arabia that induced Good to enter into an employment contract. The crucial question for clause two applicability, however, is whether the clearly commercial recruitment activity in the United States, is also the activity on which this lawsuit is based under § 1605(a)(2). In order to fall under clause two, this activity must give rise to Plaintiffs' claims. Despite Plaintiffs' artful pleadings that characterize their causes of action as claims for breach of employment contract and misrepresentation occurring in the United States, they cannot change the essential nature of their claim, which is one for negligence, *i.e.*, medical malpractice, or intentional misrepresentation that occurred in Saudi Arabia, and which has nothing to do with Good's arrangements for employment that occurred in the United States. In essence, Plaintiffs' claims sound in tort, not in contract, as reflected in the nature of the damages that they seek. A provision in an employment agreement to provide adequate medical services cannot be read as a guarantee that a government-owned and-operated hospital will not perform tortious acts or that it will be responsible in perpetuity for a catastrophic medical condition, even if that condition was caused by the negligence of the hospital's personnel. The majority in *Nelson* characterized the plaintiffs' attempt to make a case for Saudi Arabia's failure to warn them of its own "tortious propensity" as a "semantic ploy." 507 U.S. at 363, 113 S.Ct. at 1480. Similarly, the Goods' attempt to make a case for fraudulent misrepresentation of adequate medical services is a semantic ploy that seeks to recast a straightforward tort claim that arose in Saudi Arabia into a misrepresentation that arose in the United States.

### 2. Clause Three

▮ Plaintiffs also insist that this case falls under clause three of § 1605(a)(2), a commercial activity abroad with direct effect in the United States. The Goods maintain that their claims do not arise out of a single incident that took place in the foreign sovereign's territory. Rather, they contend that Saudi Aramco's recruitment and hiring practices in the United States and their performance of contractual obligations in Saudi Arabia and the deliberate withholding of information had a direct effect in the United States because an American citizen, such as Logan Good, permanently disabled because of Saudi Aramco's failure to provide proper medical care, will incur tremendous expense, which may be borne by American taxpayers.

Saudi Aramco argues that clause three does not apply because this action is not based upon any conduct causing a "direct effect in the United States." A number of cases hold that the

> "eventual effect in the United States of the personal injury or death of an American citizen while abroad is not direct within the meaning of the Act even if the foreign government agency might foresee that a United States citizen might be injured while traveling or working in its territory."

*Zernicek v. Brown & Root, Inc.*, 826 F.2d 415, 418 (5th Cir., 1987) (and cases cited

therein), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 862 (1988).

In *Zedan,* 849 F.2d at 1515, the court determined that the contract to pay Zedan was breached in Saudi Arabia and the breach continued after Zedan left Saudi Arabia and returned to the United States, but the effect in the United States was not "direct" because it was due to an intervening event, *i.e.,* Zedan's return. It applied " 'the common sense interpretation of "direct effect" [as] one which has no intervening element but, rather, flows in a straight line without deviation or interruption.' " *Id.,* quoting *Upton v. Empire of Iran,* 459 F.Supp. 264, 266 (D.D.C. 1978), *aff'd mem.,* 607 F.2d 494 (D.C.Cir. 1979). See also *Martin v. Republic of South Africa,* 836 F.2d 91 (2d Cir.1987); *Princz v. Federal Republic of Germany,* 26 F.3d 1166 (D.C.Cir.1994), *cert. denied,* 513 U.S. 1121, 115 S.Ct. 923, 130 L.Ed.2d 803 (1995).

The Goods maintain that the exception to immunity under the third clause of § 1605(a)(2) applies to this action because material promises and representations were made by Saudi Aramco in Houston that did not materialize or that proved false and caused injury to plaintiffs, which injury continues to be sustained since the Goods' "forced" return to the United States. Such an eventuality, the Goods argue, was the direct and foreseeable consequence of Saudi Aramco's failure to meet its obligations in Saudi Arabia. In support of this argument Plaintiffs cite *Ampac v. Republic of Honduras,* 797 F.Supp. 973, 977 (S.D.Fla.1992), *aff'd,* 40 F.3d 389 (11th Cir.1994), which also involved claims of fraud, misrepresentation, and breach of contract. The court in *Ampac* stated, "[T]he effect in the United States need only be slight. Although the effect cannot be speculative, the contact with the United States may indeed be only a tangential one to support jurisdiction under the FSIA."

Slight or not, clause three of § 1605(a)(2) clearly does not apply here because as discussed above, there were no "direct effects" in the United States of the injury sustained by Logan Good in Saudi Arabia. In *Republic of Argentina v. Weltover* Post–Interview letter written., 504 U.S. 607, 618, 112 S.Ct.

2160, 2168, 119 L.Ed.2d 394 (1992) the United States Supreme Court rejected earlier circuit decisions that "direct effect" means a "substantial" or "foreseeable" effect and instead held that "an effect is 'direct' if it follows 'as an immediate consequence of the defendant's. activity.' " *quoting* the lower court opinion, 941 F.2d 145, 152 (2nd Cir. 1991).

In *Princz v. Federal Republic of Germany,* 26 F.3d at 1173, quoting *Antares Aircraft, L.P. v. Federal Republic of Nigeria,* 999 F.2d 33, 36 (2d Cir.1993), the D.C. Circuit held:

> The lingering effects of a personal injury suffered overseas cannot be sufficient to satisfy the direct effect requirement of the FSIA. Otherwise, "the commercial activity exception would in large part eviscerate the FSIA's provision of immunity for foreign states."

## WAIVER

The waiver exception in § 1605(a)(1) reads,

> "A foreign state shall not be immune from the jurisdiction of courts of the United States or the States in any case—
>
> (1) in which the foreign state has waived its immunity either explicitly or by implication . . . ."

The Goods argue that Saudi Aramco has waived its right to sovereign immunity because its Articles of Association provide, "The Company shall conduct its activities on a commercial basis and for the purpose of profit as is done by private commercial companies." Plaintiffs argue that this language indicates that Saudi Aramco is a commercial entity. They argue further that "a state engages in commercial activity under the restrictive theory where it exercises 'only those powers that can be exercised by private citizens.' " *Nelson,* 507 U.S. at 360, 113 S.Ct. at 1479, *quoting Weltover,* 504 U.S. at 614, 112 S.Ct. at 2166. A foreign sovereign engages in commercial activity when it acts "in the manner of a private player" in the conduct of its business activities. *Weltover,* 504 U.S. at 614, 112 S.Ct. at 2166. Plaintiffs cite this language as establishing the "commercial character" of Saudi Aramco's activities. Un-

der plaintiffs' theory once this commercial character is established there is automatically a complete waiver of sovereign immunity and no necessity to examine the location of the alleged commercial activity, as. required by § 1605(a)(2).

Saudi Aramco points out that the Goods have not provided evidence nor cited statutory language, legislative history nor relevant case law to demonstrate that Saudi Aramco intended implicitly or explicitly to waive its sovereign immunity under § 1605(a)(1).

The legislative history of the FSIA gives three examples of situations in which a sovereign state implicitly waives its immunity: (1) it agrees to arbitration in another country; (2) it agrees that a contract is governed by the laws of a particular country; and (3) it files a responsive pleading without raising the immunity defense. H.R.Rep. No. 1487, 94th Cong., 2d Sess. 18, reprinted in 1976 U.S.C.A.A.N. 6604, 6617. In *Rodriguez v. Transnave, Inc.*, 8 F.3d 284, 287 (5th Cir. 1993) the Fifth Circuit noted that courts are reluctant to go beyond the three examples cited in legislative history.

Saudi Aramco points out that Plaintiffs do not argue that one of the three examples in the legislative history applies here. Rather, relying on *Bank of United States v. Planters' Bank of Georgia*, 22 U.S. (9 Wheat) 904, 907, 6 L.Ed. 244 (1824), the Goods contend that Saudi Aramco has implicitly waived the immunity by including in its Articles provisions for representation of officers and directors in lawsuits brought against them in their official capacity and for indemnification of expenses incurred by them by reason of such lawsuits. Such provisions are not inconsistent with sovereign immunity. There is no provision in the Articles expressly stating that Saudi Aramco is subject to suit in the United States. In *Arriba*, 962 F.2d at 539, the Fifth Circuit, in holding that a "sue and be sued" clause in Pemex's corporate charter, without more, was insufficient to constitute a waiver of immunity within the meaning of FSIA, rejected the argument that *Planters' Bank*'s had a bearing on the question of whether a foreign sovereign could be sued in the courts of the United States. Reliance on *Planters'*

*Bank* for an implicit waiver here is without merit.

■ Nor, Saudi Aramco urges, did it explicitly waive its sovereign immunity. An explicit waiver must be an "intentional and knowing relinquishment of the legal right," *Castro v. Saudi Arabia*, 510 F.Supp. 309, 312 (W.D.Tex.1980). In this action there is no allegation of a renouncement of immunity in any treaty or in a contract with a foreign party and there is no evidence of any intentional and knowing relinquishment of Saudi Aramco's right to such immunity.

Plaintiffs respond that, because foreign sovereign immunity is an affirmative defense to be established by the entity asserting it, Saudi Aramco must first shoulder the burden of establishing that it is entitled to sovereign immunity, which the Goods' argue it has not done because it has failed to meet its ultimate burden of showing the nonapplicability of the commercial activity exceptions in § 1605(a)(2). As has been seen, however, Saudi Aramco has met that burden. Saudi Aramco has not waived its sovereign immunity under the provision of § 1605(a)(1).

In conclusion the defendants are immune from suit and this cause must be dismissed for want of jurisdiction.

### *ORDER*

In accordance with the Memorandum issued. this date, it is hereby **Ordered** that the Plaintiffs' case is **DISMISSED** with prejudice and that the Defendants recover of the Plaintiffs their costs of court.