**In re CHINA OIL AND GAS PIPELINE BUREAU, Relator.**

**No. 14–02–00170–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 22, 2002.

Ben H. Sheppard Jr., Frank L. Hill, Houston, for relator.

Guy S. Lipe, Martin J. Seigel, Houston, for respondent.

Panel consists of Justices HUDSON, FOWLER, and EDELMAN.

## OPINION

WANDA McKEE FOWLER, Justice.

In this original proceeding, relator, China Oil and Gas Pipeline Bureau ("China Oil"), seeks a writ of mandamus ordering the trial court to vacate its orders of October 25, 2001, and January 25, 2002, denying China Oil's Amended Plea to the Jurisdiction and Motion to Dismiss. The real parties in interest, Lisa P.H. Lin, Paul C.K. Lin, and Europamerica Originals, Inc. ("the Lins"), contend the trial court correctly denied the motion. We conditionally grant the writ.

## I. FACTUAL AND PROCEDURAL HISTORY

The Lins live in Austin, Texas. Mrs. Lin is the sole shareholder in Europamerica Originals, Inc., a Texas corporation. China Oil is a wholly-owned subsidiary of the China National Petroleum Company, which is wholly owned by the People's Republic of China. According to the Lins, in 1996, they, China Oil, and others[1] agreed to form and manage a joint venture company known as the Langfang Huanmei Pipeline Pig Technical Service Co., Ltd. ("Huanmei"). The company was formed to make and sell oil and gas pipeline equipment in China and service other Chinese and non-Chinese energy companies. A "joint venture memorandum" was signed by the parties, with Mr. Lin signing as agent of Europamerica. According to the Lins, they never received or signed any final contract formally establishing Huanmei. They claim China Oil forged Mr. Lin's signature on the document China Oil claims is the contract finally establishing Huanmei.

According to the Lins, unaware of the forgeries and having accepted the representations made by China Oil, they invested capital, time, and energy in the joint venture. They claim they were told by China Oil that they owned 50% of the shares in the venture and would receive half of the profits. The Lins claim, however, they learned in 2000 that they were not actually registered as 50% shareholders and they would not receive any profits from the venture. The Lins and Europamerica then sued China Oil, its president, and other individuals in the 157th District Court of Texas. The Lins alleged breach of contract, breach of fiduciary duty, and fraud.

The Lins never served process on China Oil; however, several individual defendants were served while traveling in Texas and China Oil became aware of the suit through these individuals. From February through July of 2000, a representative

---

1. Two other American parties—Jack L. Dyer and Knapp Polly Pig, Inc.—signed the joint venture memorandum. However, at some point, Dyer and Knapp Polly Pig withdrew. There is a dispute as to whether the withdrawal was before or after Huanmei was officially formed. The president of Knapp Polly Pig, Kenneth Knapp, avers he withdrew before the joint venture was actually formed; however, his signature appears on the final joint venture contract. Mr. Knapp claims the signature is a forgery. He also denies transferring any company stock to the Lins and contends the documents produced by China Oil showing a stock transfer are also forgeries.

of China Oil forwarded numerous letters to the district court claiming, among other things, the trial court had no jurisdiction over China Oil based on an arbitration clause in the written joint venture contract (the one the Lins claim they never saw and the one Knapp claims somebody forged his name to) that requires arbitration in China. The trial court characterized at least one of the letters as a "special appearance," and by order dated March 31, 2000, found it had subject matter jurisdiction and that there were sufficient contacts for personal jurisdiction. Thus, the trial court denied the "special appearance." No representative of China Oil was present at the "special appearance" hearing. On August 29, 2000, the trial court granted summary judgment in favor of the Lins in the amount of $23.3 million, plus postjudgment interest. The individual defendants were non-suited. All of this was done without China Oil being represented.

In September of 2000, China Oil retained counsel and filed a motion to vacate, modify, correct and reform the judgment and for new trial. In the motion, China Oil claimed the following: (1) as a foreign sovereign, it is immune from suit under the Foreign Sovereign Immunities Act of 1976 ("FSIA") and, therefore, the trial court lacked subject matter jurisdiction over it; (2) the trial court never acquired personal jurisdiction over China Oil because China Oil was never served in accordance with section 1608(b) of the FSIA; and (3) the Lins' claims are subject to mandatory arbitration in China pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. At the same time, China Oil removed the suit to federal court pursuant to section 1441(d) of the United States Code, which grants an absolute right of removal to foreign sovereigns. 28 U.S.C. § 1441(d). China Oil claimed the 30–day removal period under section 1446(b) of the United

States Code had never begun to run because China Oil had never been served, and that good cause existed for extending the removal period as permitted by section 1441(d). The Lins moved to remand the case back to state court because the removal was untimely. The Lins based their argument on the fact that a China Oil representative sent numerous letters to the trial court. On December 11, 2000, the federal district court granted the motion to remand.

On January 5, 2001, a judge assigned to sit in the 157th District Court after the prior judge's retirement and before appointment of a new judge, conducted an oral hearing on the motion to vacate. The judge vacated the summary judgment and granted a new trial. The judge also decided to leave the issues of sovereign immunity, personal jurisdiction, and arbitration to the newly-appointed judge. Finally, the judge also ruled that the Lins would be given the opportunity to amend their petition to address the FSIA and conduct discovery on those issues.

In response to this ruling, the Lins filed a third amended petition. China Oil filed a plea to the jurisdiction and motion to dismiss, and later, an amended plea and motion. The trial court conducted an oral hearing on the amended plea and motion. China Oil called Mr. Lin to the stand to testify about the arbitration issue; however, the trial court interrupted the hearing before the testimony was complete and stated it would take up the sovereign immunity issue first and then, if necessary, resume the testimony on the arbitration issue. Without ever resuming the hearing, the trial court later entered an order denying China Oil's motion finding (1) China Oil waived sovereign immunity under the FSIA, (2) China Oil failed to establish the existence of a valid arbitration clause, and (3) the trial court has subject matter and

personal jurisdiction over China Oil. By letter, China Oil requested the opportunity to complete the hearing on the arbitration issue. The trial court granted this request and resumed the hearing, stating that it had not intended to rule on the arbitration issue. At the hearing, Mr. Lin completed his testimony and the trial court heard argument on the arbitration issue and requested additional briefing. Ultimately, the trial court entered an order finding the Lins did not have to arbitrate and reaffirming its October 25, 2001, order. After this ruling, the parties agreed that further proceedings in the trial court would be stayed pending the resolution of the mandamus proceeding. China Oil filed this petition for writ of mandamus.

## II. RELATOR'S ARGUMENTS:

China Oil has two arguments: (1) the trial court lacks jurisdiction over the Lins' claims because neither the waiver nor the commercial activities exceptions to the FSIA applies; and (2) the trial court erred in holding that China Oil has no right to arbitrate the Lins' claims. It is undisputed that China Oil is an agency or instrumentality of a foreign state, China. Thus, the FSIA applies. The questions presented by the petition are whether the trial court erred in (1) finding any of the exceptions to the FSIA applicable, and (2) finding China Oil failed to establish a valid arbitration clause under the Convention of the Recognition and Enforcement of Foreign Arbitral Awards.

China Oil contends that the court's ruling that China Oil waived its immunity from suit—based on letters sent from China Oil to the trial court—is without merit. It argues the waiver exception is narrowly construed and authorizes jurisdiction only if the foreign state made a conscious deci-

sion to participate in the litigation. China Oil argues its letters exhibited no such decision; rather, the letters consistently took the position, for various reasons, that the trial court should not hear the case.

We will not discuss in detail the Lins' arguments regarding the commercial activities exception and arbitration because, as we explain below, any ruling on these issues by this court is premature. We merely note the Lins' position that neither issue bars the court's assertion of authority over the case.

## III. REAL PARTY IN INTERESTS' ARGUMENTS:

In response, the Lins argue the trial court correctly decided in favor of jurisdiction and against arbitration because (1) both the waiver and commercial activities exceptions apply; and (2) they are not required to arbitrate [2].

## IV. STANDARD OF REVIEW:

### A. Mandamus

Mandamus is an extraordinary remedy available only in limited circumstances. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex.2001). A court should issue mandamus only to correct a clear abuse of discretion or the violation of a legal duty when there is no other adequate remedy at law. *Id.*; *In re Daisy Mfg. Co.*, 17 S.W.3d 654, 658 (Tex.2000).

A claim of immunity under the FSIA is in the nature of a special appearance in that it precludes a trial court from exercising jurisdiction over a suit brought against a foreign sovereign unless an exception is applicable. *See East Europe Domestic Int'l Sales Corp. v. Terra*, 467 F.Supp. 383, 387 (S.D.N.Y.1979), *aff'd*, 610 F.2d 806 (2d Cir.1979) (stating FSIA is

**2.** The Lins give specific reasons for this position but, again, we will not list these details here because any ruling by this court on the

commercial activities exception and arbitration would be premature.

intended to be long-arm statute and designed to embody requirements of minimum jurisdictional contacts and adequate notice); *Linton v. Airbus Industrie*, 934 S.W.2d 754, 757 (Tex.App.-Houston [14th Dist.] 1996, writ denied), *cert. denied*, 525 U.S. 1145, 119 S.Ct. 1039, 143 L.Ed.2d 47 (1999) (stating challenges to immunity of foreign sovereign are commonly brought under rule 120a governing special appearance). Generally, a defendant whose special appearance is overruled has an adequate remedy by appeal, and is therefore not entitled to mandamus relief. *K.D.F. v. Rex*, 878 S.W.2d 589, 592 (Tex.1994). However, when issues of sovereign immunity and comity are at stake, the Texas Supreme Court has found an exception to the rule. *Id.* (citing *Canadian Helicopters v. Wittig*, 876 S.W.2d 304, 306 (Tex.1994)). In *Canadian Helicopters*, the relator argued that under *United Mexican States v. Ashley*, 556 S.W.2d 784 (Tex.1977), it was entitled to bring a mandamus to challenge the denial of a special appearance. *Canadian Helicopters*, 876 S.W.2d at 306. The supreme court disagreed noting that *Ashley* involved the issue of sovereign immunity, implicating comity and foreign affairs-concerns not present in the usual special appearance. *Id.* In *K.D.F.*, the supreme court recognized the exception enunciated in *Ashley* and confirmed in *Canadian Helicopters* and explained that the exception exists because interstate and international relations might be harmed if a Texas trial court erroneously exercises jurisdiction over another sovereign. *K.D.F.*, 878 S.W.2d at 593. This potential harm surpasses the time and expense of an appeal, and is more important than the immediate interests of the parties to the suit. *Id.* Thus, when the issue is whether a Texas state court has properly asserted jurisdiction over a foreign sovereign, appeal does not provide an adequate remedy. *See id.*

■ Because there is no adequate remedy by appeal, mandamus is available in this case. The only remaining issue is whether the trial court clearly abused its discretion in denying China Oil's plea to the jurisdiction and motion to dismiss.

■ A trial court abuses its discretion when its decision is so arbitrary and unreasonable that it is a clear and prejudicial error of law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). When the trial court's decision rests on the resolution of factual issues or matters committed to the court's discretion, "[t]he relator must establish that the trial court could reasonably have reached only one decision." *In re Rangel*, 45 S.W.3d 783, 786 (Tex.App.-Waco 2001, orig. proceeding) (quoting *Walker*, 827 S.W.2d at 839–40). This burden is a heavy one. *Canadian Helicopters*, 876 S.W.2d at 305. If the trial court has held an evidentiary hearing and has resolved disputed issues of fact, we may not substitute our judgment on the facts for that of the trial court. *Dallas Morning News v. Fifth Court of Appeals*, 842 S.W.2d 655, 660 (Tex.1992); *Rangel*, 45 S.W.3d at 786 (citing *Walker*, 827 S.W.2d at 839). In other words, an appellate court may not deal with disputed matters of fact in an original mandamus proceeding. *Hooks v. Fourth Court of Appeals*, 808 S.W.2d 56, 60 (Tex.1991); *Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 714 (Tex.1990); *Shell Oil Co. v. Smith*, 814 S.W.2d 237, 241 (Tex.App.-Houston [14th Dist.] 1991, orig. proceeding).

■ Our review is much less deferential with respect to the legal principles a trial court has determined are controlling, because a trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker*, 827 S.W.2d at 840. Thus, a failure by the trial court to analyze or apply the law correctly will

constitute an abuse of discretion and may result in mandamus.

## V. APPLICABLE LAW:

### A. The Foreign Sovereign Immunities Act

Foreign sovereigns have historically enjoyed immunity from suits in United States courts. *See Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 488, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983); *Goar v. Compania Peruana de Vapores,* 688 F.2d 417, 425–26 (5th Cir.1982). Initially, however, immunity was a matter of "grace and comity on the part of the United States." *Verlinden,* 461 U.S. at 486, 103 S.Ct. at 1967. Thus, the courts consistently deferred to the suggestions of the executive branch (passed on to the courts through the State Department) on whether to take jurisdiction over actions against foreign sovereigns and their instrumentalities. 461 U.S. at 486, 103 S.Ct. at 1967–68. In 1952, the State Department announced its adoption of the "restrictive" theory of foreign sovereign immunity. 461 U.S. at 487, 103 S.Ct. at 1968. Under this theory, immunity was confined to suits involving the public acts of the foreign sovereign, and did not extend to cases arising out of strictly commercial acts. *Id.* The restrictive theory was not, however, initially enacted into law. *Id.* Moreover, applying it proved troublesome. *Id.* Initial responsibility for deciding questions of immunity still fell primarily upon the executive branch, acting through the State Department, and foreign sovereigns often placed diplomatic pressure on the State Department when seeking immunity. *Id.* Occasionally, political considerations led to suggestions of immunity when immunity would not have been granted under a strict interpretation of restrictive theory. *Id.* In addition, the foreign sovereigns did not always go to the State Department to request immunity; rather, some sovereigns would go directly to the courts and it then fell to them to determine the existence of immunity. *Id.* They would often rely on prior State Department decisions. *Id.* Thus, sovereign immunity decisions were being made by two branches of government, subject to a variety of factors, including, at times, diplomatic considerations. 461 U.S. at 488, 103 S.Ct. at 1968.

■ Because of these problems, Congress enacted the FSIA in 1976 to accomplish the following: (1) free the government from diplomatic pressures; (2) clarify governing standards for foreign sovereign immunity; and (3) assure litigants that decisions are made on purely legal grounds and under procedures that insure due process of law. *Id.* (citing H.R.Rep. No. 94–1487, p. 7 (1976), reprinted in [1976] U.S.Code Cong. & Ad. News 6604). In other words, the FSIA was enacted to depoliticize sovereign immunity decisions by transferring them from the executive branch to the judicial branch of government. This was to assure litigants that such decisions would be made on legal, rather than political, grounds. *Id.; see also* 28 U.S.C. § 16.02. To accomplish these objectives, the FSIA contains a comprehensive set of legal standards governing claims of immunity in every civil action against a foreign state or its political subdivisions, agencies, or instrumentalities. *Verlinden,* 461 U.S. at 486, 103 S.Ct. at 1967. Now, the FSIA provides the sole basis for obtaining jurisdiction over a foreign state in the court of the United States. *Saudi Arabia v. Nelson,* 507 U.S. 349, 355, 113 S.Ct. 1471, 1476, 123 L.Ed.2d 47 (1993).

■ Essentially, the FSIA codified the restrictive theory of sovereign immunity. *Verlinden,* 461 U.S. at 486, 103 S.Ct.

at 1967. Under the FSIA, a foreign state [3] is presumptively immune from the jurisdiction of federal and state courts. *Nelson,* 507 U.S. at 355, 113 S.Ct. at 1476; 28 U.S.C. § 1604. Section 1604 states, in pertinent part, "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in section 1605 to 1607 of this chapter." 28 U.S.C. § 1604. If no exception to sovereign immunity is applicable, courts "lack[ ] both subject-matter and personal jurisdiction." *In re Tamimi,* 176 F.3d 274, 278 (4th Cir.1999) (quoting *Verlinden,* 461 U.S. at 485 n. 5, 103 S.Ct. 1962).

**B. Exceptions to the Foreign Sovereign Immunities Act—Waiver**

Exceptions to the FSIA include actions in which the foreign state has explicitly or impliedly waived its immunity, 28 U.S.C. § 1605(a)(1), and actions based upon commercial activities of the foreign sovereign carried on in the United States or causing a direct effect in the United States. 28 U.S.C. § 1605(a)(2).[4] When an exception applies, the foreign state is liable in the same manner and to the same extent as a private individual under like circumstances. 28 U.S.C. § 1606.

A foreign state is not immune from jurisdiction of the courts of the United States or of the states in any case "in which the foreign state has waived its immunity either explicitly or by implication." 28 U.S.C. § 1605(a)(1). Here, the Lins do not rely on an explicit waiver; rather, they allege waiver by implication. The FSIA does not define an implied waiver. But, courts have consistently held that the implicit waiver provision of section 1605(a)(1) must be narrowly construed. *See, e.g., Sampson v. Fed. Republic of Germany,* 250 F.3d 1145 (7th Cir.2001); *Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.,* 204 F.3d 384, 391 (2d Cir.2000); *Pere v. Nuovo Pignone, Inc.,* 150 F.3d 477, 482 (5th Cir.1998); *Smith v. Socialist People's Libyan Arab Jamahiriya,* 101 F.3d 239, 243 (2d Cir.1996); *In re Estate of Ferdinand Marcos Human Rights Litigation,* 94 F.3d 539, 546 (9th Cir.1996); *Princz v. Fed. Republic of Germany,* 26 F.3d 1166, 1174 (D.C.Cir.1994); *Rodriguez v. Transnave Inc.,* 8 F.3d 284, 287 (5th Cir.1993); *Joseph v. Office of the Consulate General of Nigeria,* 830 F.2d 1018, 1022 (9th Cir.1987); *Zernicek v. Petroleos Mexicanos (Pemex),* 614 F.Supp. 407, 411 (S.D.Tex.1985), *aff'd,* 826 F.2d 415

3. The FSIA broadly defines "foreign state" to "include[ ] a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). An "agency or instrumentality of a foreign state" includes any entity: (1) which is a separate legal person, corporate or otherwise, and (2) which is an organ of a foreign state or political subdivision thereof, or a majority of who shares or other ownership interest is owned by a foreign state or political subdivision thereof, and (3) which is neither a citizen of a state of the United States nor created under the law of any third country. *Id.* at § 1603(b). Here, China Oil is a wholly-owned subsidiary of China National Petroleum Company. China National is wholly owned by the People's Republic of China. Thus, China Oil qualifies as a "foreign state"

under the FSIA. The parties do not dispute that China Oil is a "foreign state" and the FSIA applies. The only issue in this case is whether the FSIA authorizes the trial court to exercise jurisdiction over China Oil under the exceptions to the FSIA.

4. The FSIA also contains other exceptions that do not apply here. *See* 28 U.S.C. §§ 1605(a)(3) (certain actions in which rights in property taken in violation of international law are in issue), 1605(a)(4) (actions involving rights in real estate and in inherited and gift property located in United States), 1605(a)(5) (actions for certain noncommercial torts within United States), 1605(b) (certain actions involving maritime liens), and 1607 (certain counterclaims).

(5th Cir.1987). In fact, courts rarely find that a nation has waived its sovereign immunity without strong evidence that the foreign sovereign intended to waive. *Sampson*, 250 F.3d at 1150; *Princz*, 26 F.3d at 1174; *Rodriguez*, 8 F.3d at 287. As one court noted, implicit waiver "involve[s] circumstances in which the waiver was unmistakable, and courts have been reluctant to find an implied waiver where the circumstances were not similarly unambiguous." *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir.1991). Thus, an implied waiver clearly depends upon the foreign government's having at some point indicated its amenability to suit.

This approach by the courts derives from the legislative history of the FSIA, in which Congress specified three examples of implicit waivers: (1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that a contract is governed by the law of a particular country; and (3) a foreign state has filed a responsive pleading in a case without raising the defense of sovereign immunity. H.R.Rep. No. 1487, 94th Cong., 2d Sess. 18 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6617; S.Rep. No. 1310, 94th Cong., 2d Sess. 18 (1976). Since the FSIA became law, when courts have considered claims that a nation has implicitly waived its defense of sovereign immunity, they have been reluctant to stray beyond these three examples. *Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1291 n. 24 (11th Cir.1999); *Tamimi*, 176 F.3d at 278–79; *Princz*, 26 F.3d at 1174; *Rodriguez*, 8 F.3d at 287; *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 377 (7th Cir.1985). Moreover, these examples have been construed narrowly. *See Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1017 (2d Cir. 1993).

## C. Burden of Proof Under the FSIA

The party claiming immunity, i.e., the movant (China Oil), bears the initial burden of proof to establish that it satisfies the FSIA's definition of a foreign state. *Keller v. Central Bank of Nigeria*, 277 F.3d 811, 815 (6th Cir.2002); *Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo General del Sindicato Revolucionario de Trabajadores Petroleros del la Republica Mexicana, S.C.*, 923 F.2d 380, 390 n. 14 (5th Cir.1991); *Good v. Aramco Servs. Co.*, 971 F.Supp. 254, 256 (S.D.Tex.1997). Once this prima facie case is established, the burden of production shifts to the non-movant (the Lins) to show that an exception applies. *Id.* The party asserting an exception must assert at least some facts that would establish the exception. *Stena Rederi*, 923 F.2d at 390 n. 14; *Good*, 971 F.Supp. at 256. If this burden of production is satisfied, the party claiming immunity under the FSIA must satisfy its ultimate burden of persuasion by demonstrating the inapplicability of the exceptions asserted by the non-movant. *Keller*, 277 F.3d at 815; *Stena Rederi*, 923 F.2d at 390 n. 14; *Good*, 971 F.Supp. at 256.

In this case, there is no dispute that China Oil is a foreign sovereign under the FSIA. Thus, the Lins, as non-movants, were required to assert some facts to establish the applicability of one or more exceptions. The record establishes they satisfied this burden of production. Accordingly, China Oil retained the ultimate burden of persuasion to establish the inapplicability of the exceptions asserted by the Lins.

## VI. ANALYSIS:

### A. Waiver Exception

In its first argument, China Oil contends it did not expressly or implicitly waive its immunity under the FSIA. It is undisputed that there was no "express" waiver of im-

munity. Thus, the only question is whether there was an implicit waiver. As stated above, the legislative history of the FSIA provides that implicit waivers are generally found only when a foreign state has done one of the following: (1) agreed to arbitration in another country; (2) agreed that a contract is governed by the law of a particular country; or (3) filed a responsive pleading in a case without raising the defense of sovereign immunity. H.R.Rep. No. 1487, 94th Cong., 2d Sess. 18 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6617; S.Rep. No. 1310, 94th Cong., 2d Sess. 18 (1976). Courts have been reluctant to stray beyond these examples when considering claims that a nation has implicitly waived its defense of sovereign immunity. *Aquamar, S.A.,* 179 F.3d at 1291 n. 24; *Tamimi,* 176 F.3d at 278–79; *Princz,* 26 F.3d at 1174; *Rodriguez,* 8 F.3d at 287; *Frolova,* 761 F.2d at 377. In this case, the parties agree that neither the first nor the second examples apply; rather, the dispute centers on the third example and what China Oil said in the letters and what conduct it took over the course of the litigation. We now look to the letters China Oil sent to the court.

### 1. *The Letters*

After the Lins filed suit, a China Oil representative sent five letters to the trial court from China. China Oil contends these letters are not responsive pleadings and, even if they can be characterized as responsive pleadings, the letters do not reflect a conscious decision by China Oil to participate in the litigation. Therefore, they claim, there is no waiver of immunity. In response, the Lins argue the letters are responsive pleadings under the Federal Rules of Civil Procedure and China Oil's failure to assert sovereign immunity in the letters constitutes a waiver of the defense. Specifically, the Lins contend the letters are responsive pleadings under rule 8 of the Federal Rules of Civil Procedure because they contain both factual denials and affirmative defenses. *See* FED.R.CIV.P. 8(b), (c).

The Lins point out that in the first letter, China Oil denied all of the following: (1) that the Lins were proper parties to the suit because it "never made any joint-investment with Mr. & Mrs. Lin;" (2) that it had breached the joint venture agreement—rather, Europamerica had; (3) that it had divested Europamerica of its 50% interest in Huanmei; and (4) that the joint venture arrangement was to be performed in the United States. Moreover, the Lins argue, China Oil essentially put forth a general denial by broadly stating that the Lins "did not disclose the factual course and backgrounds of the disputes" and then providing an extensive factual discussion.

Similarly, in the second letter, the Lins point out that China Oil again provided a prolonged factual discussion controverting facts alleged by the Lins in the petition. Attached to the second letter are several statements and declarations supporting the statements made in the letter. The third letter also contained denials—specific and general—of the claims asserted by the Lins. For example, in the third letter, the China Oil representative stated "the alleged fraud [asserted by the Lins] is sheer nonsense." The representative also accused the Lins of lying to the court. The final two letters repeat many of the same denials contained in the first three.

Finally, the Lins point out that more than one of the letters assert affirmative defenses, specifically failure to arbitrate and improper service. Thus, according the Lins, the assertions in the letters, i.e., the factual allegations, denials, and affirmative defenses, constitute a waiver of sovereign immunity under the FSIA.

However, as China Oil points out, the letters, contain more than factual asser-

tions, denials, and defenses. When considered in their entirety, the letters establish that China Oil consistently asserted its immunity from suit. For example, in the first paragraph of the first letter sent by China Oil to the trial court, the representative from China Oil wrote:

We obtain a copy of Original Petition of Mr. & Mrs. Lin from one of our staff. *What before you is a document from China Oil and Gas Pipeline Bureau (COGPB) for dismissal of the subject case. COGPB hereby declared solemnly that this document does not constitute any kind of acceptance of jurisdiction by your court.* [sic]

(emphasis added)

 Throughout the letters, this position is reiterated. We recognize that in the letters China Oil linked its claim of lack of jurisdiction to the existence of an arbitration clause requiring arbitration in China. We further recognize that a motion to dismiss is not the proper vehicle for asserting a failure to arbitrate pursuant to an arbitration agreement, *see* 5A Wright and Miller, § 1350 (2d ed.), and that the existence of an arbitration clause does not divest a court of jurisdiction over the action. *See Bionumerik Pharmaceuticals, Inc. v. Nair,* No. Civ. A.SA–99–CA1302FB, 2000 WL 33348187, at *1 (W.D.Tex. March 22, 2000) (citing *New Process Steel Corp. v. Titan Indus. Corp.,* 555 F.Supp. 1018, 1020 (S.D.Tex.1983)). Nevertheless, in each letter, China Oil insisted it was not amenable to suit in the United States. Accordingly, whatever the stated reason, China Oil always maintained it was not subject to the jurisdiction of the courts of the United States. As we have noted, courts rarely find that a nation has waived its sovereign immunity without *strong* evidence that the foreign sovereign intended to waive. *Sampson,* 250 F.3d at 1150; *Princz,* 26 F.3d at 1174; *Rodriguez,* 8 F.3d at 287. Courts have found an implicit waiver only when waiver was *unmistakable. Shapiro,* 930 F.2d at 1017. As stated by one court, "Congress anticipated, at a minimum, that waiver would not be found absent a conscious decision to take part in the litigation." *Drexel Burnham Lambert Group, Inc. v. Committee of Receivers for Galadari,* 12 F.3d 317, 327 (2d Cir.1993) (quoting *Frolova,* 761 F.2d at 378).[5]

We find the case of *Haven v. Polska,* 215 F.3d 727 (7th Cir.2000) instructive and persuasive. In that case, Haven and Welbel (collectively "Haven") brought suit in the United States against the Republic of Poland and the State Treasury of Poland (collectively "Poland") seeking the return of property allegedly belonging to them and their families. *Id.* at 730. They claimed the property was improperly seized by the Polish government after World War II. *Id.* After the suit was filed, the Polish Consulate in Chicago delivered a letter to the district court expressing the Polish Ministry of Justice's view that service was improper. *Id.* The letter did not raise the issue of immunity. *Id.* at 731. After the letter was sent, Poland filed a motion to dismiss this case on grounds of sovereign immunity. *Id.* at 730.

Haven argued Poland had waived immunity based on the letter delivered to the district court by the Polish Consulate. *Id.* at 731. The district court held the letter was not a responsive pleading; this finding

---

5. We recognize, as the Lins assert, that the "conscious decision" language used by the courts in *Drexel Burnham* and *Frolova* does not specifically appear in the FSIA or its legislative history; however, this interpretation is completely consistent with the decades-old policy of preserving a foreign sovereign's immunity except in those instances in which the sovereign intended to subject itself to the jurisdiction of the courts of this country.

was affirmed by the Seventh Circuit. *Id.* at 733. In reaching its decision, the Seventh Circuit found that its holding was consistent with Congress' requirement that waiver on the part of foreign sovereigns be knowing:

> Congress anticipated, at a minimum that waiver would not be found absent a conscious decision to take part in the litigation and a failure to raise sovereign immunity despite the opportunity to do so. The case law evidences a reticence to find a waiver from the nature of a foreign state's participation in litigation.

*Id.* at 733 (quoting *Frolova,* 761 F.2d at 378). According to the Seventh Circuit, Poland's letter objecting to the adequacy of service was not a conscious decision to take part in the litigation; rather, it was an indication by Poland that it did not intend to participate in the litigation. *Id.* Thus, the court held, Poland's letter did not waive sovereign immunity.

Though the court's decision in *Haven* was based, in part, on its determination that the letter did not constitute a responsive pleading under rule 7 of the Federal Rules of Civil Procedure, the court's reasoning clearly establishes that the intent of the document alleged to be a responsive pleading is determinative on the issue of waiver. *See id.* at 732–33. Here, the letters sent by the China Oil representative to the trial court do not establish a conscious decision to take part in the litigation; indeed, the letters all show that China Oil *did not* intend to participate in the litigation.

Thus, because (1) we are to narrowly construe the waiver exception and its examples, and (2) the letters fail to evince a conscious intent to take part in the litigation, we cannot say that the letters, even if considered responsive pleadings under the federal rules, waived China Oil's immunity under the FSIA; at no point did they express a conscious decision or intent by China Oil to take part in the suit filed by the Lins or indicate China Oil's amenability to suit in the United States.

## 2. *China Oil's Conduct*

The Lins also argue that China Oil's conduct over the course of the litigation supports a finding of waiver. Specifically, the Lins focus on China Oil's failure to assert immunity until "its strategy of *pro se* persuasion failed," and a judgment was entered. A similar argument was rejected by the Fifth Circuit in *Rodriguez,* 8 F.3d at 289–90. In *Rodriguez,* an Ecuadorian sailor was injured while fighting a fire aboard a ship owned by Transnave, a state naval entity of Ecuador. *Id.* at 286. He was treated at a Hawaiian port and then returned to Ecuador. *Id.* Later, Rodriguez, while serving on another Transnave vessel, developed health problems and when the vessel called in the Port of Houston, he disembarked to receive medical treatment. *Id.* Rodriguez then filed suit against Transnave in a Texas state court claiming personal injury damages under the Jones Act and the general maritime law of the United States. *Id.* The case was removed to federal court. *Id.*

Ultimately, Transnave filed a motion to dismiss based upon sovereign immunity under the FSIA, which the trial court denied. *Id.* at 286–87. The trial court found Transnave had implicitly waived its right to immunity under the FSIA because it had participated in discovery and trial preparation for two years before filing the motion to dismiss. *Id.* at 289. The Fifth Circuit found the trial court had erred in finding waiver on this basis. *Id.* In reaching this decision, the Fifth Circuit relied on *Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.,* 727 F.2d 274 (2d Cir.1984). In that case, the Second Circuit upheld the district court's finding that sovereign immunity was not

waived, even though the defendant never filed a responsive pleading, but instead filed several motions that did not assert sovereign immunity and did not file a motion to dismiss on the basis of sovereign immunity until more than two years after the complaint was first filed. *Canadian Overseas*, 727 F.2d at 277–78. In both cases, the courts noted that federal courts have been reluctant to base a finding of waiver on the nature of a foreign state's participation in litigation. *Rodriguez*, 8 F.3d at 289; *Canadian Overseas*, 727 F.2d at 278; *see also Haven*, 215 F.3d at 733 (quoting *Frolova*, 761 F.2d at 377) ("The case law evidences a reticence to find a waiver from the nature of a foreign state's participation in the litigation.").

■ In this case, China Oil's participation in the litigation was limited to sending five letters to the trial court over five months. Importantly, as we have noted, in each of these letters, China Oil challenged the court's authority to decide the case. We find that this participation is legally insufficient to support a finding of waiver under the FSIA and the cases interpreting it.

The three cases relied upon by the Lins to support their argument that China Oil's conduct over the course of the litigation waived immunity are distinguishable. In *Raji v. Bank Sepah–Iran*, a case from the New York state court, the trial court held that a "foreign sovereign cannot invoke immunity with respect to the execution of a judgment when it discovers it has lost the cause." 139 Misc.2d 1026, 529 N.Y.S.2d 420, 422 (N.Y.Sup.Ct.1988). *Raji* is inapplicable because the foreign sovereign filed an answer and a counterclaim and then waited until after a full trial on the merits to assert immunity under the FSIA. *Id.*

A similar failure to timely assert immunity occurred in *Barragan v. Banco BCH*, a case from the California state court. 188 Cal.App.3d 283, 232 Cal.Rptr. 758 (Cal.Ct. App.), *rev. denied*, (Cal.1987). In that case, however, the sovereign did not assert immunity until it filed a motion to vacate the entry of the default judgment. *Id.* at 295, 232 Cal.Rptr. 758. This was six months after it had filed a proposed answer, which raised only res judicata, and a motion to set aside the default judgment. *Id.* Similarly, in *Sea Lift, Inc. v. Refinadora Costarricense De Petroleo, S.A.*, 601 F.Supp. 457, 465–66 (S.D.Fla.1984), *rev'd on other grounds*, 792 F.2d 989 (11th Cir. 1986), the foreign sovereign waited until the closing argument of trial to assert immunity, and thus, the trial court found the defense was waived. In short, in all three cases the sovereign engaged in litigation—even to the point of going to trial—before asserting immunity. The actions taken by China Oil and its conduct in this litigation do not rise to this level of activity.

Accordingly, we hold the trial court abused its discretion in denying China Oil's motion to dismiss based upon a finding that it waived immunity under the FSIA. Neither the letters nor China Oil's conduct show a conscious decision to participate in the litigation, an intention to waive immunity, or a desire to subject itself to the jurisdiction of the courts of the United States.

## B. Commercial Activities Exception

China Oil has also argued in its petition that the trial court abused its discretion in rejecting immunity based on the commercial activities exception to the FSIA.[6] How-

---

6. China Oil states in its petition that it is addressing this issue only because the Lins

"may seek to justify the trial court's decision

ever, mandamus is not appropriate to resolve this issue at this time. This ground was raised in the trial court, but, the trial court *did not* base its decision on this ground. Rather, in its order of October 25, 2001 (affirmed by the order of January 25, 2002), the trial court relied specifically and exclusively on the waiver provision of the FSIA and its determination that no valid arbitration clause existed.

Moreover, the parties agree the trial court did not base its order on the commercial activities exception. Nevertheless, the Lins argue this Court should address whether China Oil is immune under that exception. In support of this argument, the Lins contend we may uphold the order on any ground raised below. They claim that China Oil acknowledges this by "contesting the applicability of this exception in its petition." We disagree.

 When the trial court determined that China Oil was subject to the jurisdiction of the Texas courts under the FSIA, its decision was limited to the waiver exception. This is borne out by the trial court's order which limited its finding to the waiver exception. The trial court did not rule upon the applicability of the commercial activities exception. We find that in this situation, mandamus is not appropriate. The law is clear that courts should issue mandamus only when there is no other adequate remedy at law. *First-Merit Bank, N.A.*, 52 S.W.3d at 753; *Daisy Mfg. Co.*, 17 S.W.3d at 658. Because the trial court has not ruled on the commercial activities exception, there is an adequate legal remedy, i.e., both China Oil and the Lins can present argument and seek relief in the trial court on this exception. We would be acting prematurely— and without authority—if we were to rule based on the commercial activities excep-

on this issue before allowing the trial court to rule on it.

In support of their argument that we should address this claim, the Lins cite *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277 (Tex.1987). In that case, the supreme court held that in the absence of any findings of fact and conclusions of law, it was the appellant's burden to show the trial court's judgment was not supported by any legal theory raised by the evidence. *Id.* at 279. Thus, based on this holding the Lins argue China Oil must show that the trial court's decision to deny the motion to dismiss was erroneous on each ground presented. The *Whorton* reasoning does not apply here.

In *Whorton*, a trial was held before the court and neither side requested findings of fact or conclusions of law. 742 S.W.2d at 278. The supreme court held, and we agree, that after a *bench trial*, if no findings and conclusions are requested or filed, all questions of fact are presumed found in support of the judgment and the judgment must be affirmed if it can be upheld on any legal theory raised by the evidence. While this is the appropriate standard of review on appeal following a bench trial with no requested findings or conclusion, this is not the standard of review in a mandamus proceeding.

Accordingly, we decline to address the applicability of the commercial activities exception. The parties are free to raise this issue and seek relief in the trial court.

### C. Arbitration Provision

In addition to claiming the trial court lacked jurisdiction under the FSIA, China Oil also asserted in the trial court that the Lins' were bound to arbitrate their claims under the terms of the joint venture agreement. Article 57 of the joint venture agreement states the following:

tion."

All disputes arising from the implementation of, or in connection with, this Contract shall be resolved by the parties through friendly consultation. If a dispute cannot be resolved through consultations, the dispute shall be submitted to the China International Economic and Trade Arbitration Commission in accordance with the arbitration rules. The arbitral awards shall be final and binding on both parties. The costs of arbitration shall be borne by the losing party.

■■■ China Oil argues here that the Lins are bound to arbitrate; the Lins contend they are not required to arbitrate. The trial court found China Oil "failed to establish a valid arbitration clause to be enforced under the Convention of the Recognition and Enforcement of Arbitral Awards." However, the trial court cannot enter an order regarding arbitration until it decides whether the commercial activities exception applies. (If the commercial activities exception does not apply, the court has no jurisdiction over China Oil and cannot order it to arbitration.) Because the court has not ruled on the commercial activities exception, it abused its discretion in ordering the parties to arbitrate. That portion of the order must be vacated.[7]

## VII. CONCLUSION

In conclusion, having found the trial court abused its discretion in (1) finding that China Oil waived its immunity under the FSIA on the waiver exception and (2) ordering the parties to arbitrate without ruling on the applicability of the commercial activities exception, we conditionally grant the petition for writ of mandamus. The trial court is ordered to vacate its orders of October 25, 2001, and January 25, 2002. The writ will issue only if the trial court refuses to vacate the orders of October 25, 2001, and January 25, 2002, which deny China Oil's Amended Plea to the Jurisdiction and Motion to Dismiss.

---

7. We express no opinion on the merits regarding the validity or enforceability of the arbitration provision. Any determination at this point—other than our finding that the trial court cannot rule on this matter yet—is premature.