In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3823

EDWARD HAVEN and ALLEN WELBEL,

Plaintiffs-Appellants,

v.

RZECZPOSPOLITA POLSKA, SKARB PANSTWA,
State Treasury of Poland, POWSZECHNY
ZAKLAD UBEZPIECZEN S.A.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 1727--Milton I. Shadur, Judge.

Argued April 6, 2000--Decided June 8, 2000

Before POSNER, Chief Judge, and FLAUM and RIPPLE,
Circuit Judges.

RIPPLE, Circuit Judge.  Edward Haven and Allen
Welbel brought this action seeking the return of
property allegedly belonging to them and their
families. They claim that the property was seized
by the Polish government after World War II. The
district court dismissed the action on the ground
that it lacked subject matter jurisdiction. For
the reasons set forth in the following opinion,
we affirm the judgment of the district court.

I
BACKGROUND/1

Edward Haven and Allen Welbel both emigrated
from Poland to the United States after World War
II because of the Polish government's anti-
Semitic policies. Both of them left behind real
property owned by their families. Mr. Haven's
property was insured by Powszechny Zaklad
Ubezpieczen ("PZU"), a Polish insurance company.
Mr. Haven and Mr. Welbel allege that their family
lands were illegally seized by the state, and Mr.
Haven also alleges that PZU failed to honor its
insurance contract. PZU itself was nationalized
by Poland after World War II.

In 1960, Poland and the United States entered

into a treaty by which Poland agreed to compensate United States nationals for property seized by Poland after World War II (the "Treaty"). The Treaty provided that Poland would pay $40,000,000 in full settlement of all claims made by nationals of the United States. The United States set up an administrative procedure by which its nationals could obtain a portion of the settlement.

In March 1999, Mr. Haven and Mr. Welbel brought this action in the district court./2 The complaint sought the return of property and damages from the Republic of Poland and the State Treasury of the Republic of Poland (collectively "Poland"). It also sought damages from Poland for interfering with PZU's contracts and from PZU for failing to perform its contracts. Mr. Haven and Mr. Welbel served process on the Polish government on May 7. On July 8, the Polish Consulate in Chicago delivered a letter to the district court, purporting to express the Polish Ministry of Justice's view that service was improper under the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"). The district court postponed a default hearing scheduled for July 12, and on July 13 counsel for Poland and PZU entered an appearance.

On August 10, Poland and PZU filed a motion to dismiss the case on several grounds, including lack of subject matter jurisdiction due to sovereign immunity. There is no dispute that all of the defendants in this case are "foreign states" within the meaning of the 1976 Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C. sec. 1602 et seq. The district court entered an order on August 24 holding that the FSIA could be applied retroactively to claims arising before its passage. On September 29, the district court ruled that it lacked subject matter jurisdiction because the action did not fall within any of the exceptions to the general rule that foreign sovereigns are immune from suit in United States courts. First, the court held that the Polish Consulate's July 8 letter was not a knowing relinquishment of rights that waived sovereign immunity./3 Second, it held that the Treaty had not expressly waived sovereign immunity./4 Third and finally, the district court found that PZU had not waived its sovereign immunity by undertaking commercial activity in the United States.

II

DISCUSSION

We review de novo a district court's dismissal for lack of subject matter jurisdiction. See Fedorca v. Perryman, 197 F.3d 236, 239 (7th Cir. 1999); Kaplan v. United States, 133 F.3d 469, 472-73 (7th Cir. 1998). Foreign sovereigns historically enjoyed immunity from common law suit in United States courts. See In re Air Crash Disaster Near Roselawn, Ind., 96 F.3d 932, 945-46 (7th Cir. 1996); Goar v. Compania Peruana de Vapores, 688 F.2d 417, 425-26 (5th Cir. 1982). The FSIA provides a statutory codification of that immunity. See Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 488 (1983); Employers Ins. of Wausau v. Banco De Seguros Del Estado, 199 F.3d 937, 941 (7th Cir. 1999); Wolf v. Federal Republic of Germany, 95 F.3d 536, 540-41 (7th Cir. 1996). The FSIA also provides exceptions to the rule of sovereign immunity. See Verlinden, 480 U.S. at 488; Wolf, 95 F.3d at 541. Because those exceptions are in derogation of the common law, we must not read them broadly. Statutes in derogation of the common law are narrowly construed. See Norfolk Redevelopment & Housing Auth. v. Chesapeake & Potomac Tel. Co., 464 U.S. 30, 35 (1983); In re Liberatore, 574 F.2d 78, 85 (2d Cir. 1978); Picker v. Searcher's Detective Agency, 515 F.2d 1316, 1319 (D.C. Cir. 1975).

A.

Mr. Haven's and Mr. Welbel's first argument that jurisdiction is appropriate relies on the letter mailed to the district court by the Polish Consulate. Mr. Haven and Mr. Welbel contend that this letter brings Poland within an exception to sovereign immunity:

A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver.

28 U.S.C. sec. 1605(a)(1). If a sovereign files a responsive pleading without raising the defense of sovereign immunity, then the immunity defense is waived. See Frolova v. Union of Soviet Socialist Republics, 761 F.2d 370, 377 (7th Cir. 1985) (per curiam); accord Drexel Burnham Lambert v. Committee of Receivers, 12 F.3d 317, 326 (2d Cir. 1993); United States v. Crawford Enters., 643 F. Supp. 370, 378-79 (S.D. Tex. 1986). The letter sent by the Polish Consulate to the district court did not raise any sovereign immunity defense; therefore, if the letter was a responsive pleading, sovereign immunity has been

waived. Mr. Haven and Mr. Welbel argue that the letter was a responsive pleading.

Rule 7 of the Federal Rules of Civil Procedure explains that only certain filings may be considered responsive pleadings, including a complaint, an answer, a reply to a counterclaim, an answer to a cross-claim, a third-party complaint, and a third-party answer. "No other pleading shall be allowed." Fed. R. Civ. P. 7. A responsive pleading need only be filed after proper service has been made. See Silva v. City of Madison, 69 F.3d 1368, 1376 (7th Cir. 1995) ("[A] responsive pleading is required only after service has been effected and the party has been made subject to the jurisdiction of the federal courts."); Bowman v. Weeks Marine, Inc., 936 F. Supp. 329, 336-37 (D.S.C. 1996).

Although objections to service of process may be made in a responsive pleading, they may also be made through a Rule 12 motion to dismiss. As Rule 12(b) explains:

Every defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (5) insufficiency of service of process.

Fed. R. Civ. P. 12 (emphasis added). We have acknowledged that the insufficiency of service of process may properly be raised through a motion to dismiss. See, e.g., Troxell v. Fedders of North Am., Inc., 160 F.3d 381, 382-83 (7th Cir. 1998) (affirming district court's grant of defendant's "motion to dismiss" for insufficient process). A motion to dismiss is not a responsive pleading. See Duda v. Board of Educ. of Franklin Park, 133 F.3d 1054, 1056-57 & n.2 (7th Cir. 1998); Camp v. Gregory, 67 F.3d 1286, 1289 (7th Cir. 1995); Scam Instrument Corp. v. Control Data Assoc., 458 F.2d 885, 889 (7th Cir. 1972)./5

The Federal Rules of Civil Procedure also specifically contemplate that foreign sovereigns will be allowed to object to the adequacy of service. Rule 4, which governs service of process, requires that service on foreign sovereigns comply with 28 U.S.C. sec. 1608. See Fed. R. Civ. P. 4(j)(1). The Hague Convention itself is attached to Rule 4 as an appendix. Article 4 of the Convention allows foreign sovereigns to object to the service of process./6

The Federal Rules of Civil Procedure, and our case law interpreting those rules, require us to hold that sovereign immunity was not waived by

the Polish Consulate's letter. The only court filing that can waive a sovereign immunity defense is a responsive pleading that does not raise the defense. The Consulate's letter objecting to the propriety of service is properly treated as a motion to dismiss, not a responsive pleading. See Hirsh v. State of Israel, 962 F. Supp. 377, 380 (S.D.N.Y.) ("Although an implied waiver may be found where a foreign state files a responsive pleading that fails to raise the defense of sovereign immunity, Germany's letter is not a 'responsive pleading.'" (citation omitted)), aff'd, 133 F.3d 907 (2d Cir. 1997)./7 Indeed, until it was established that service of process had been properly executed, Poland was under no obligation to file any responsive pleading. See Silva, 69 F.3d at 1368. Because the letter was not a responsive pleading, its failure to raise the sovereign immunity defense did not compromise Poland's ability to raise that defense.

Our holding that Poland's letter objecting to service of process did not waive sovereign immunity is consistent with Congress' requirement that waiver on the part of foreign sovereigns be knowing. We have written:

Congress anticipated, at a minimum, that waiver would not be found absent a conscious decision to take part in the litigation and a failure to raise sovereign immunity despite the opportunity to do so. The case law evidences a reticence to find a waiver from the nature of a foreign state's participation in litigation.

Frolova, 761 F.2d at 378. Poland's objection to the adequacy of service was not "a conscious decision to take part in the litigation"; indeed, it was an indication by Poland that, at that point, it did not intend to participate in the litigation. Thus, Poland's letter objecting to the service of process should not waive its sovereign immunity.

We also cannot agree with Mr. Haven's and Mr. Welbel's contention that their counsel's phone conversations with employees of the Polish Consulate led to a waiver of Poland's sovereign immunity. Counsel for Mr. Haven and Mr. Welbel telephoned the Polish Consulate, and counsel claims that two Polish Consulate employees spoke to him without raising the sovereign immunity defense. Mr. Haven and Mr. Welbel argue that the district court improperly ruled that the employees did not have the authority to waive sovereign immunity. The district court found there was nothing to suggest that those employees had the authority to waive Poland's sovereign immunity. Even if those employees did have the

authority to waive sovereign immunity, they could not do so in a telephone conversation. A telephone conversation is not a responsive pleading. Thus, we decline to find waiver from any communications between counsel and the Consulate.

B.

Mr. Haven and Mr. Welbel next argue that the district court had jurisdiction because the Treaty waived Poland's sovereign immunity. The district court initially assumed that Mr. Haven and Mr. Welbel were not United States nationals in 1960 when the Treaty was signed; it ruled that, even if the Treaty did waive Poland's sovereign immunity, it could do so only as to persons who were United States nationals in 1960. After the district court ruled, Mr. Haven and Mr. Welbel sought leave to establish that they were, in fact, United States nationals at the time of the Treaty. The district court then determined that, if they were United States nationals at the time of the Treaty, the Treaty itself would foreclose their claim. Because we believe that nothing in the Treaty contemplates a waiver of Poland's sovereign immunity, we need not determine whether Mr. Haven and Mr. Welbel were United States nationals in 1960.

1.

The text of the Treaty contains no mention of any waiver of sovereign immunity. It does not even mention the availability of a cause of action in the United States courts. There is therefore no basis for finding that the Treaty waived Poland's sovereign immunity. A foreign sovereign does not waive its sovereign immunity "by signing an international agreement that contains no mention of a waiver of immunity to suit in United States courts or even the availability of a cause of action in the United States." Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 442-43 (1989); see also Creighton Ltd. v. Government of the State of Qatar, 181 F.3d 118, 123 (D.C. Cir. 1999); Smith v. Socialist People's Libyan Arab Jamahiriya, 101 F.3d 239, 245-46 (2d Cir. 1997).

Even if Mr. Haven and Mr. Welbel had been United States nationals in 1960, the Treaty could not be said to waive Poland's sovereign immunity. Indeed, the text of the Treaty makes plain that Poland expected the Treaty to eliminate any obligation it had to defend against claims by United States nationals for nationalized property. The President of the United States has the authority to renounce or extinguish claims of United States nationals against foreign

governments in exchange for lump-sum payments. See Dames & Moore v. Regan, 453 U.S. 654, 679 (1981); Belk v. United States, 858 F.2d 706, 709 (Fed. Cir. 1988). The Treaty is an example of an agreement between the United States and a foreign sovereign that extinguishes all claims by United States nationals. See Dames & Moore, 453 U.S. at 680 n.9; see also Schmidt v. Polish People's Republic, 742 F.2d 67, 72 (2d Cir. 1984). The text of the Treaty is clear. Article I describes the lump sum payment made by Poland to the United States as a "full settlement and discharge of all claims of nationals of the United States." 11 U.S.T. 1953 at Art. I. That lump sum was to be distributed "in accordance with such methods of distribution as may be adopted by the Government of the United States." Id. at Art. III. Thus, by the terms of Articles I and III, the United States replaced Poland as the country responsible for ensuring that proper compensation was made to United States nationals who owned land nationalized by Poland./8 The language of the Treaty makes explicit that Poland expected the lump-sum payment to satisfy fully its duties to United States nationals. It would be futile, therefore, to allow Mr. Haven and Mr. Welbel to prove that they were United States nationals in 1960 because the 1960 Treaty did not waive Poland's sovereign immunity against United States nationals.

2.

Mr. Haven and Mr. Welbel argue, however, that, although the text of the Treaty does not waive explicitly Poland's sovereign immunity, the language nevertheless permits the invocation of various exceptions to sovereign immunity. As we explain in the following paragraphs, however, these exceptions are not applicable.

Mr. Haven and Mr. Welbel submit that the Treaty has waived sovereign immunity by designating that American law would govern any contractual disputes. At the outset, we note that no such clause exists in this treaty. The portion of the Treaty's annex cited by Mr. Haven and Mr. Welbel is a discussion of what persons may seek recompense under the Treaty; it does not provide that United States law would govern any contractual disputes. See Treaty Annex A(b)-A(d) & B./9 Moreover, although a sovereign may waive implicitly its immunity through a contract if the contract "stipulate[s] that American law should govern any contractual disputes," Frolova, 761 F.2d at 377, courts have required a more explicit waiver in the case of treaties, see id. at 378 ("[W]aiver by treaty is not included in the list of examples of implicit waivers.").

Mr. Haven and Mr. Welbel also contend that, through the language of the Treaty, Poland sought assistance from the United States in protecting against claims asserted through other countries. Article V of the Treaty states that the United States would provide to Poland copies of any formal statements of claim. See Treaty at V.B. This provision ensured that, once a United States national was compensated through the Treaty, Poland would have a record of that national's claim being satisfied in order to prevent that national from asserting another claim through the government of another nation. Poland's request for information about claims filed in the United States does not make Poland amenable to suit in United States courts or expressly waive its sovereign immunity in those courts. Therefore, we conclude that Article V does not waive Poland's sovereign immunity.

In summary, we are not persuaded that the text of the Treaty has waived Poland's sovereign immunity. "Courts have generally required convincing evidence that a treaty was intended to waive sovereign immunity before holding that a foreign state may be sued in this country." Frolova, 761 F.2d at 378. There is nothing in this Treaty to suggest that Poland ever intended to waive its immunity to suit in United States courts under any circumstances. The text of the Treaty does not waive Poland's sovereign immunity, regardless whether Mr. Haven and Mr. Welbel were United States citizens in 1960.

3.

When a sovereign has protected its immunity through the language of a treaty, it may nonetheless waive that immunity by its actions in United States courts. If a foreign nation brings an action in a United States court against a United States citizen, it may waive its immunity from suit by that individual. See Siderman v. Republic of Argentina, 965 F.2d 699, 722 (9th Cir. 1992) ("The evidence indicates that Argentina deliberately involved United States courts in its efforts to persecute Jose Siderman. If Argentina has engaged our courts in the very course of activity for which the Sidermans seek redress, it has waived its immunity as to that redress."). There is no allegation that Poland ever "deliberately involved United States courts" in any matter involving either Mr. Haven or Mr. Welbel. Thus, Poland has not waived its sovereign immunity by any action relating to the Treaty.

C.

Mr. Haven and Mr. Welbel's final argument that the district court had subject matter

jurisdiction is based on the FSIA's commercial activity exception. A foreign sovereign may waive sovereign immunity by carrying on commercial activity in the United States. The FSIA permits jurisdiction in any case:

in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. sec. 1605(a)(2). This subsection requires that the lawsuit itself must be "based upon" the commercial activity that supports a waiver of sovereign immunity. See Saudi Arabia v. Nelson, 507 U.S. 349, 358 (1993); Santos v. Compagnie Nationale Air France, 934 F.2d 890, 892 (7th Cir. 1991) ("This Court and most others have stated that the term 'based upon' requires an 'identifiable nexus' between the claim and the commercial activity at issue."); Rush-Presbyterian-St. Luke's Med. Ctr. v. Hellenic Republic, 877 F.2d 574, 582 (7th Cir. 1989). The Fifth Circuit has explained that "there must be a connection between the plaintiff's cause of action and the commercial acts of the foreign sovereign." Stena Rederi AB v. Comision de Contratos del Comite Ejecutivo General del Sindicato Revolucionario de Trabajadores Petroleros de la Republica Mexicana, S.C., 923 F.2d 380, 386 (5th Cir. 1991); see also Byrd v. Corporacion Forestal y Industrial de Olancho S.A., 182 F.3d 380, 389 (5th Cir. 1999) (quoting Stena Rederi); In re Tamimi, 176 F.3d 274, 280 (4th Cir. 1999) (same).

The commercial activities alleged by Mr. Haven and Mr. Welbel are internet advertisements for insurance marketed by PZU and efforts by PZU to market insurance to United States consumers. Assuming without deciding that the alleged activities constitute commercial activity in the United States, these activities bear no relation to the claims raised by Mr. Haven and Mr. Welbel. Any current efforts by PZU to market insurance in the United States have no relationship to PZU's role in the nationalization of property in Poland after World War II. Thus, this lawsuit is not "based upon" commercial activity in the United States, and the commercial activity exception of the FSIA cannot apply.

Conclusion

For the foregoing reasons,/10 the judgment of

the district court is affirmed.

AFFIRMED

/1 When reviewing a dismissal for lack of subject matter jurisdiction, we assume the truth of the plaintiffs' factual allegations and consider those allegations in the light most favorable to the plaintiffs. See Komorowski v. Townline Mini-Mart & Restaurant, 162 F.3d 962, 964 (7th Cir. 1998) (per curiam).

/2 Mr. Haven and Mr. Welbel sought appointment as representatives of a class. The district court never reached the issue of class certification.

/3 The court also held that Poland's objection to the service of process was erroneous, and that process had properly been served on Poland.

/4 The district court's order assumed that Mr. Haven and Mr. Welbel were not United States nationals at the time of the Treaty, and thus outside the Treaty's scope. After Mr. Haven and Mr. Welbel filed supplemental materials with the court stating that they may have been United States nationals in 1960, the district court issued an October 4 supplemental order, finding that if they were United States nationals in 1960, their claims were foreclosed by the Treaty itself.

/5 Accord Bowden v. United States, 176 F.3d 552, 555 (D.C. Cir. 1999); United States ex rel. Saaf v. Lehman Bros., 123 F.3d 1307, 1308 (9th Cir. 1997) (per curiam); Barbara v. New York Stock Exch., Inc., 99 F.3d 49, 56 (2d Cir. 1996); Brever v. Rockwell Int'l Corp., 40 F.3d 1119, 1131 (10th Cir. 1994).

/6 Normally, the objection must be made by the Central Authority of the foreign sovereign, which informs the applicant of its objections. See Hague Convention at Art. 4. In this case we are not asked to decide whether Poland followed the correct procedure under the Hague Convention in its objection to service, only whether Poland's objection to the service of process was in the form of a responsive pleading.

/7 Mr. Haven and Mr. Welbel seek to distinguish Hirsh on the ground that in that case, Germany's letter to the court expressly reserved its sovereign immunity defense, unlike Poland's letter here. Although the court in Hirsh noted language in Germany's letter reserving a sovereign immunity defense, the court actually relied on the fact that the letter itself was not a responsive pleading. See Hirsh, 962 F. Supp. at 380.

/8 The United States fulfilled, through the Foreign Claims Settlement Commission (the "FCSC"), its obligation to make whole its nationals who owned land seized by Poland. The FCSC has jurisdiction to adjudicate claims brought by any United States national arising under:

the terms of any claims agreement concluded on or after March 10, 1954, between the Government of the United States and a foreign government (exclusive of governments against which the United States declared the existence of a state of war during World War II) similarly providing for the settlement and discharge of claims of the Government of the United States and of nationals of the United States against a foreign government, arising out of the nationalization or other taking of property, by the agreement of the Government of the United States to accept from that government a sum in en bloc settlement thereof.

22 U.S.C. sec. 1623(a)(1)(B). The FCSC disbursed the funds obtained from Poland in the Treaty. See Schmidt, 742 F.2d at 69 (discussing claims for recompense under the Treaty filed with the FCSC). The FCSC completed its administration of the Polish Claims Program in 1966. See Foreign Claims Settlement Comm'n, Twenty-Fourth Semiannual Report to the Congress 37 (1996). FCSC decisions may not be reviewed by a federal court. See 22 U.S.C. sec. 1622g.

/9 The portion of the Treaty Annex cited by Mr. Haven and Mr. Welbel reads, in full:

A.  For the purpose of distribution by the Government of the United States of the sum to be paid by the Government of Poland, "claims of nationals of the United States" are rights and interests in and with respect to property nationalized, appropriated or otherwise taken by Poland which, from the date of such nationalization, appropriation or other taking to the date of entry into force of this Agreement, have been continuously owned, subject to the provisions of paragraphs B and C of this Annex,

. . . .

(b)  directly by juridical persons organized under the laws of the United States or of a constituent State or other political entity thereof, of which fifty per cent or more of the outstanding capital stock or proprietary interest was owned by nationals of the United States;

(c)  directly by juridical persons organized under the laws of the United States or of a constituent State or other political entity

thereof, of which fifty per cent or more of the outstanding capital stock or proprietary interest was owned by natural persons who were nationals of the United States, directly, or indirectly through interests in one or more juridical persons of any nationality;

(d)  indirectly by natural persons who were nationals of the United States or by juridical persons organized under the laws of the United States or of a constituent State or other political entity thereof, through interests in juridical persons organized under the laws of the United States or of a constituent State or other political entity thereof which are not included within category (b) or (c) above[.]

. . . .

B.  Juridical persons organized under the laws of the United States or of a constituent State or other political entity thereof which have been reorganized through judicial proceedings after their property or rights and interests in and with respect to property were nationalized or taken by Poland shall participate in the sum to be paid by the Government of Poland only to the extent that the outstanding capital stock or proprietary interest in such juridical persons was owned, at the time of such nationalization or other taking, by natural persons who were nationals of the United States, directly, or indirectly through interests in one or more juridical persons organized under the laws of the United States or of a constituent State or other political entity thereof.

11 U.S.T. 1953 Annex, at A(b)-A(d) & B.

/10 Because the district court lacked jurisdiction over this matter, we need not consider the alternate grounds for dismissal argued by Poland.