Petition for Writ of Mandamus Conditionally Granted and Opinion filed
August 22, 2002












 
 
 
  
 
 
 




Petition for Writ of Mandamus Conditionally Granted
and Opinion filed August 22, 2002.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00170-CV

____________

 

IN RE CHINA OIL AND GAS PIPELINE BUREAU,
Relator

 

 



 

ORIGINAL
PROCEEDING

WRIT
OF MANDAMUS

 



 

O P I N I O N

In this original proceeding, relator, China Oil
and Gas Pipeline Bureau (AChina
Oil@), seeks a writ of mandamus ordering
the trial court to vacate its orders of October 25, 2001, and January 25, 2002,
denying China Oil=s Amended Plea to the Jurisdiction and Motion to
Dismiss.  The real parties in interest,
Lisa P.H. Lin, Paul C.K. Lin, and Europamerica Originals, Inc. (Athe Lins@), contend the trial court correctly
denied the motion.  We conditionally
grant the writ.

I.  FACTUAL AND PROCEDURAL HISTORY








The Lins live in Austin, Texas.  Mrs. Lin is the sole shareholder in
Europamerica Originals, Inc., a Texas corporation.  China Oil is a wholly-owned subsidiary of the
China National Petroleum Company, which is wholly owned by the People=s Republic of China.  According to the Lins, in 1996, they, China
Oil, and others[1]
agreed to form and manage a joint venture company known as the Langfang Huanmei
Pipeline Pig Technical Service Co., Ltd. (AHuanmei@). 
The company was formed to make and sell oil and gas pipeline equipment
in China and service other Chinese and non-Chinese energy companies.  A Ajoint venture memorandum@ was signed by the parties, with Mr.
Lin signing as agent of Europamerica. 
According to the Lins, they never received or signed any final contract
formally establishing Huanmei.  They
claim China Oil forged Mr. Lin=s signature on the document China Oil claims is the contract
finally establishing Huanmei.  

According to the Lins, unaware of the forgeries and having
accepted the representations made by China Oil, they invested capital, time,
and energy in the joint venture.  They
claim they were told by China Oil that they owned 50% of the shares in the
venture and would receive half of the profits. 
The Lins claim, however, they learned in 2000 that they were not
actually registered as 50% shareholders and they would not receive any profits
from the venture.  The Lins and
Europamerica then sued China Oil, its president, and other individuals in the
157th District Court of Texas.  The Lins
alleged breach of contract, breach of fiduciary duty, and fraud.  








The Lins never served process on China Oil; however, several
individual defendants were served while traveling in Texas and China Oil became
aware of the suit through these individuals. 
From February through July of 2000, a representative of China Oil
forwarded numerous letters to the district court claiming, among other things,
the trial court had no jurisdiction over China Oil based on an arbitration
clause in the written joint venture contract (the one the Lins claim they never
saw and the one Knapp claims somebody forged his name to) that requires
arbitration in China.  The trial court
characterized at least one of the letters as a Aspecial appearance,@ and by order dated March 31, 2000,
found it had subject matter jurisdiction and that there were sufficient
contacts for personal jurisdiction. 
Thus, the trial court denied the Aspecial appearance.@ 
No representative of China Oil was present at the Aspecial appearance@ hearing.  On August 29, 2000, the trial court granted
summary judgment in favor of the Lins in the amount of $23.3 million, plus
postjudgment interest.  The individual
defendants were non-suited.  All of this
was done without China Oil being represented. 


In September of 2000, China Oil retained counsel and filed a
motion to vacate, modify, correct and reform the judgment and for new
trial.  In the motion, China Oil claimed
the following:  (1) as a foreign
sovereign, it is immune from suit under the Foreign Sovereign Immunities Act of
1976 (AFSIA@) and, therefore, the trial court
lacked subject matter jurisdiction over it; (2) the trial court never acquired
personal jurisdiction over China Oil because China Oil was never served in
accordance with section 1608(b) of the FSIA; and (3) the Lins= claims are subject to mandatory
arbitration in China pursuant to the Convention on the Recognition and
Enforcement of Foreign Arbitral Awards. 
At the same time, China Oil removed the suit to federal court pursuant
to section 1441(d) of the United States Code, which grants an absolute right of
removal to foreign sovereigns.  28 U.S.C.
' 1441(d).  China Oil claimed the 30-day removal period
under section 1446(b) of the United States Code had never begun to run because
China Oil had never been served, and that good cause existed for extending the
removal period as permitted by section 1441(d).  The Lins moved to remand the case back to
state court because the removal was untimely. 
The Lins based their argument on the fact that a China Oil
representative sent numerous letters to the trial court.  On December 11, 2000, the federal district
court granted the motion to remand.  

On January 5, 2001, a judge assigned to sit in the 157th
District Court after the prior judge=s retirement and before appointment
of a new judge, conducted an oral hearing on the motion to vacate.  The judge vacated the summary judgment and
granted a new trial.  The judge also
decided to leave the issues of sovereign immunity, personal jurisdiction, and
arbitration to the newly-appointed judge. 
Finally, the judge also ruled that the Lins would be given the
opportunity to amend their petition to address the FSIA and conduct discovery
on those issues.  








In response to this ruling, the Lins filed a third amended
petition.  China Oil filed a plea to the
jurisdiction and motion to dismiss, and later, an amended plea and motion.  The trial court conducted an oral hearing on
the amended plea and motion.  China Oil
called Mr. Lin to the stand to testify about the arbitration issue; however,
the trial court interrupted the hearing before the testimony was complete and
stated it would take up the sovereign immunity issue first and then, if
necessary, resume the testimony on the arbitration issue.  Without ever resuming the hearing, the trial
court later entered an order denying China Oil=s motion finding (1) China Oil waived
sovereign immunity under the FSIA, (2) China Oil failed to establish the
existence of a valid arbitration clause, and (3) the trial court has subject
matter and personal jurisdiction over China Oil.  By letter, China Oil requested the
opportunity to complete the hearing on the arbitration issue.  The trial court granted this request and
resumed the hearing, stating that it had not intended to rule on the
arbitration issue.  At the hearing, Mr.
Lin completed his testimony and the trial court heard argument on the arbitration
issue and requested additional briefing. 
Ultimately, the trial court entered an order finding the Lins did not
have to arbitrate and reaffirming its October 25, 2001, order.  After this ruling, the parties agreed that
further proceedings in the trial court would be stayed pending the resolution
of the mandamus proceeding.  China Oil
filed this petition for writ of mandamus. 


II.  RELATOR=S ARGUMENTS: 


China Oil has two arguments: 
(1) the trial court lacks jurisdiction over the Lins= claims because neither the waiver
nor the commercial activities exceptions to the FSIA applies; and (2) the trial
court erred in holding that China Oil has no right to arbitrate the Lins= claims.  It is undisputed that China Oil is an agency
or instrumentality of a foreign state, China. 
Thus, the FSIA applies.  The
questions presented by the petition are whether the trial court erred in (1)
finding any of the exceptions to the FSIA applicable, and (2) finding China Oil
failed to establish a valid arbitration clause under the Convention of the
Recognition and Enforcement of Foreign Arbitral Awards.  








China Oil contends that the court=s ruling that China Oil waived its
immunity from suitCbased on letters sent from China Oil to the trial courtCis without merit.  It argues the waiver exception is narrowly
construed and authorizes jurisdiction only if the foreign state made a
conscious decision to participate in the litigation.  China Oil argues its letters exhibited no
such decision; rather, the letters consistently took the position, for various
reasons, that the trial court should not hear the case.  

We will not discuss in detail the Lins= arguments regarding the commercial
activities exception and arbitration because, as we explain below, any ruling
on these issues by this court is premature. 
We merely note the Lins= position that neither issue bars the court=s assertion of authority over the
case.

III.  REAL PARTY IN INTERESTS= ARGUMENTS: 


In response, the Lins argue the trial court correctly decided
in favor of jurisdiction and against arbitration because (1) both the waiver
and commercial activities exceptions apply; and (2) they are not required to
arbitrate[2].  

IV.  STANDARD OF REVIEW:  

A.  Mandamus








Mandamus is an extraordinary remedy available only in limited
circumstances.  In re FirstMerit Bank,
N.A., 52 S.W.3d 749, 753 (Tex. 2001). 
A court should issue mandamus only to correct a clear abuse of
discretion or the violation of a legal duty when there is no other adequate
remedy at law.  Id.; In re
Daisy Mfg. Co., 17 S.W.3d 654, 658 (Tex. 2000).         A
claim of immunity under the FSIA is in the nature of a special appearance in
that it precludes a trial court from exercising jurisdiction over a suit
brought against a foreign sovereign unless an exception is applicable.  See East Europe Domestic Int=l Sales Corp. v. Terra, 467 F. Supp. 383, 387 (S.D.N.Y.
1979), aff=d,
610 F.2d 806 (2d Cir. 1979) (stating 
FSIA is intended to be long-arm statute and designed to embody
requirements of minimum jurisdictional contacts and adequate notice); Linton
v. Airbus Industrie, 934 S.W.2d 754, 757 (Tex. App.CHouston [14th Dist.] 1996, writ
denied), cert. denied, 525 U.S. 1145 (1999) (stating challenges to
immunity of foreign sovereign are commonly brought under rule 120a governing
special appearance).  Generally, a defendant
whose special appearance is overruled has an adequate remedy by appeal, and is
therefore not entitled to mandamus relief. 
K.D.F. v. Rex, 878 S.W.2d 589, 592 (Tex. 1994).  However, when issues of sovereign immunity
and comity are at stake, the Texas Supreme Court has found an exception to the
rule.  Id. (citing Canadian
Helicopters v. Wittig, 876 S.W.2d 304, 306 (Tex. 1994)).  In Canadian Helicopters, the relator
argued that under United Mexican States v. Ashley, 556 S.W.2d 784 (Tex.
1977), it was entitled to bring a mandamus to challenge the denial of a special
appearance.  Canadian Helicopters,
876 S.W.2d at 306.  The supreme court
disagreed noting that Ashley involved the issue of sovereign immunity,
implicating comity and foreign affairsBconcerns not present in the usual
special appearance.  Id.  In K.D.F., the supreme court
recognized the exception enunciated in Ashley and confirmed in Canadian
Helicopters and explained that the exception exists because interstate and
international relations might be harmed if a Texas trial court erroneously
exercises jurisdiction over another sovereign. 
K.D.F., 878 S.W.2d at 593. 
This potential harm surpasses the time and expense of an appeal, and is
more important than the immediate interests of the parties to the suit.  Id. 
Thus, when the issue is whether a Texas state court has properly
asserted jurisdiction over a foreign sovereign, appeal does not provide an
adequate remedy.  See id. 

Because there is no adequate remedy by appeal, mandamus is
available in this case.  The only
remaining issue is whether the trial court clearly abused its discretion in
denying China Oil=s plea to the jurisdiction and motion to dismiss.  








A trial court abuses its discretion when its decision is so
arbitrary and unreasonable that it is a clear and prejudicial error of
law.  Walker v. Packer, 827 S.W.2d
833, 839 (Tex.1992).  When the trial
court=s decision rests on the resolution of
factual issues or matters committed to the court=s discretion, A[t]he relator must establish that the
trial court could reasonably have reached only one decision.@ 
In re Rangel, 45 S.W.3d 783, 786 (Tex. App.CWaco 2001, orig. proceeding) (quoting
Walker, 827 S.W.2d at 839-40). 
This burden is a heavy one. Canadian Helicopters, 876 S.W.2d at
305.  If the trial court has held an
evidentiary hearing and has resolved disputed issues of fact, we may not
substitute our judgment on the facts for that of the trial court.  Dallas Morning News v. Fifth Court of
Appeals, 842 S.W.2d 655, 660 (Tex. 1992); Rangel, 45 S.W.3d at 786
(citing Walker, 827 S.W.2d at 839). 
In other words, an appellate court may not deal with disputed matters of
fact in an original mandamus proceeding. 
Hooks v. Fourth Court of Appeals, 808 S.W.2d 56, 60 (Tex. 1991); Brady
v. Fourteenth Court of Appeals, 795 S.W.2d 712, 714 (Tex. 1990); Shell
Oil Co. v. Smith, 814 S.W.2d 237, 241 (Tex. App.CHouston [14th Dist.] 1991, orig.
proceeding).  

Our review is much less deferential with respect to the legal
principles a trial court has determined are controlling, because a trial court
has no discretion in determining what the law is or in applying the law to the
facts.  Walker, 827 S.W.2d at
840.  Thus, a failure by the trial court
to analyze or apply the law correctly will constitute an abuse of discretion
and may result in mandamus. 

V.  APPLICABLE LAW:  

A.  The Foreign
Sovereign Immunities Act








Foreign sovereigns have historically
enjoyed immunity from suits in United States courts.  See Verlinden B.V. v. Central Bank of
Nigeria, 461 U.S. 480, 488, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983); Goar
v. Compania Peruana de Vapores, 688 F.2d 417, 425-26 (5th Cir. 1982).  Initially, however, immunity was a matter of Agrace and comity on the part of the
United States.@ 
Verlinden, 461 U.S. at 486, 103 S.Ct. at 1967.  Thus, the courts consistently deferred to the
suggestions of the executive branch (passed on to the courts through the State
Department) on whether to take jurisdiction over actions against foreign
sovereigns and their instrumentalities. 
461 U.S. at 486, 103 S.Ct. at 1967-68.  
In 1952, the State Department announced its adoption of the Arestrictive@ theory of foreign sovereign
immunity.  461 U.S. at 487, 103 S.Ct. at
1968. Under this theory, immunity was confined to suits involving the public
acts of the foreign sovereign, and did not extend to cases arising out of
strictly commercial acts.  Id.  The restrictive theory was not, however,
initially enacted into law.  Id.  Moreover, applying it proved
troublesome.  Id.  Initial responsibility for deciding questions
of immunity still fell primarily upon the executive branch, acting through the
State Department, and foreign sovereigns often placed diplomatic pressure on
the State Department when seeking immunity. 
Id.  Occasionally,
political considerations led to suggestions of immunity when immunity would not
have been granted under a strict interpretation of restrictive theory.  Id. 
In addition, the foreign sovereigns did not always go to the State
Department to request immunity; rather, some sovereigns would go directly to
the courts and it then fell to them to determine the existence of
immunity.  Id.  They would often rely on prior State
Department decisions.  Id.  Thus, sovereign immunity decisions were being
made by two branches of government, subject to a variety of factors, including,
at times, diplomatic considerations.  461
U.S. at 488, 103 S.Ct. at 1968.  

Because of these problems, Congress
enacted the FSIA in 1976 to accomplish the following:  (1) free the government from diplomatic
pressures; (2) clarify governing standards for foreign sovereign immunity; and
(3) assure litigants that decisions are made on purely legal grounds and under
procedures that insure due process of law. 
Id. (citing H.R.Rep. No. 94-1487, p. 7 (1976), reprinted in
[1976] U.S. Code Cong. & Ad. News 6604. 
In other words, the FSIA was enacted to depoliticize sovereign immunity
decisions by transferring them from the executive branch to the judicial branch
of government.  This was to assure
litigants that such decisions would be made on legal, rather than political,
grounds.  Id.; see also 28 U.S.C. ' 16.02.  To accomplish these objectives, the FSIA
contains a comprehensive set of legal standards governing claims of immunity in
every civil action against a foreign state or its political subdivisions,
agencies, or instrumentalities.  Verlinden,
461 U.S. at 486, 103 S.Ct. at 1967.  Now,
the FSIA provides the sole basis for obtaining jurisdiction over a foreign
state in the court of the United States. 
Saudi Arabia v. Nelson, 507 U.S. 349, 355, 113 S.Ct. 1471, 1476,
123 L.Ed.2d 47 (1993).  








Essentially, the FSIA codified the
restrictive theory of sovereign immunity. 
Verlinden, 461 U.S. at 486, 103 S.Ct. at 1967.  Under the FSIA, a foreign state[3]
is presumptively immune from the jurisdiction of federal and state courts.  Nelson, 507 U.S. at 355, 113 S.Ct. at
1476; 28 U.S.C. ' 1604.  Section 1604
states, in pertinent part, Aa foreign state shall be immune from the jurisdiction of the
courts of the United States and of the States except as provided in section
1605 to 1607 of this chapter.@  28 U.S.C. ' 1604.  If no exception to sovereign immunity is
applicable, courts Alack[ ] both subject-matter and personal jurisdiction.@ 
In re Tamimi, 176 F.3d 274, 278 (4th Cir. 1999) (quoting Verlinden,
461 U.S. at 485 n. 5).  

B. 
Exceptions to the Foreign Sovereign Immunities ActBWaiver

Exceptions to the FSIA include
actions in which the foreign state has explicitly or impliedly waived its
immunity, 28 U.S.C. ' 1605(a)(1), and actions based upon commercial activities of
the foreign sovereign carried on in the United States or causing a direct
effect in the United States.  28 U.S.C. ' 1605(a)(2).[4]  When an exception applies, the foreign state
is liable in the same manner and to the same extent as a private individual
under like circumstances.  28 U.S.C. ' 1606. 








A foreign state is not immune from
jurisdiction of the courts of the United States or of the states in any case Ain which the foreign state has waived
its immunity either explicitly or by implication.@ 
28 U.S.C. ' 1605(a)(1).  Here, the
Lins do not rely on an explicit waiver; rather, they allege waiver by
implication.  The FSIA does not define an
implied waiver.  But, courts have
consistently held that the implicit waiver provision of section 1605(a)(1) must
be narrowly construed.  See, e.g.,
Sampson v. Fed. Republic of Germany, 250 F.3d 1145 (7th Cir. 2001); Transatlantic
Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp., 204 F.3d 384, 391
(2d Cir. 2000); Pere v. Nuovo Pignone, Inc., 150 F.3d 477, 482 (5th Cir.
1998); Smith v. Socialist People=s Libyan Arab Jamahiriya, 101 F.3d 239, 243 (2d Cir. 1996); In
re Estate of Ferdinand Marcos Human Rights Litigation, 94 F.3d 539, 546
(9th Cir. 1996); Princz v. Fed. Republic of Germany, 26 F.3d 1166, 1174
(D.C. Cir. 1994); Rodriguez v. Transnave Inc., 8 F.3d 284, 287 (5th Cir.
1993); Joseph v. Office of the Consulate General of Nigeria, 830 F.2d
1018, 1022 (9th Cir. 1987); Zernicek v. Petroleos Mexicanos (Pemex), 614
F. Supp. 407, 411 (S.D. Tex. 1985), aff=d, 826 F.2d 415 (5th Cir. 1987).  In fact, courts rarely find that a nation has
waived its sovereign immunity without strong evidence that the foreign
sovereign intended to waive.  Sampson,
250 F.3d at 1150; Princz, 26 F.3d at 1174; Rodriguez, 8 F.3d at
287.  As one court noted, implicit waiver
Ainvolve[s] circumstances in which the
waiver was unmistakable, and courts have been reluctant to find an implied
waiver where the circumstances were not similarly unambiguous.@ Shapiro v. Republic of Bolivia,
930 F.2d 1013, 1017 (2d Cir. 1991). 
Thus, an implied waiver clearly depends upon the foreign government=s having at some point indicated its
amenability to suit.  








This approach by the courts derives
from the legislative history of the FSIA, in which Congress specified three
examples of implicit waivers:  (1) a
foreign state has agreed to arbitration in another country; (2) a foreign state
has agreed that a contract is governed by the law of a particular country; and
(3) a foreign state has filed a responsive pleading in a case without raising
the defense of sovereign immunity.  H.R.
Rep. No. 1487, 94th Cong., 2d Sess. 18 (1976), reprinted in 1976
U.S.C.C.A.N. 6604, 6617; S.Rep. No. 1310, 94th Cong., 2d Sess. 18 (1976).  Since the FSIA became law, when courts have
considered claims that a nation has implicitly waived its defense of sovereign
immunity, they have been reluctant to stray beyond these three examples.  Aquamar, S.A. v. Del Monte Fresh Produce
N.A., Inc., 179 F.3d 1279, 1291 n. 24 (11th Cir. 1999); Tamimi, 176
F.3d at 278-79; Princz, 26 F.3d at 1174; Rodriguez, 8 F.3d at
287; Frolova v. Union of Soviet Socialist Republics, 761 F.2d 370, 377
(7th Cir. 1985).  Moreover, these
examples have been construed narrowly.  See
Cargill Int=l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1017 (2d Cir. 1993). 

C. 
Burden of Proof Under the FSIA

The party claiming immunity, i.e.,
the movant (China Oil), bears the initial burden of proof to establish that it
satisfies the FSIA=s definition of a foreign state.  Keller v. Central Bank of Nigeria, 277
F.3d 811, 815 (6th Cir. 2002); Stena Rederia AB v. Comision de Contratos del
Comite Ejecutivo General del Sindicato Revolucionario de Trabajadores
Petroleros del la Republica Mexicana, S.C., 923 F.2d 380, 390 n. 14 (5th
Cir. 1991); Good v. Aramco Servs. Co., 971 F. Supp. 254, 256 (S.D. Tex.
1997).  Once this prima facie case is
established, the burden of production shifts to the non-movant (the Lins) to
show that an exception applies.  Id.  The party asserting an exception must assert
at least some facts that would establish the exception.  Stena Rederia, 923 F.2d at 390 n. 14; Good,
971 F. Supp. at 256.  If this burden of
production is satisfied, the party claiming immunity under the FSIA must
satisfy its ultimate burden of persuasion by demonstrating the inapplicability
of the exceptions asserted by the non-movant. 
Keller, 27 F.3d at 815; Stena Rederia, 923 F.2d at 390 n.
14; Good, 971 F. Supp. at 256.  

In this case, there is no dispute
that China Oil is a foreign sovereign under the FSIA.  Thus, the Lins, as non-movants, were required
to assert some facts to establish the applicability of one or more
exceptions.  The record establishes they
satisfied this burden of production. 
Accordingly, China Oil retained the ultimate burden of persuasion to
establish the inapplicability of the exceptions asserted by the Lins. 

VI.  ANALYSIS:  

A. 
Waiver Exception








In its first argument, China Oil
contends it did not expressly or implicitly waive its immunity under the
FSIA.  It is undisputed that there was no
Aexpress@ waiver of immunity.  Thus, the only question is whether there was
an implicit waiver.  As stated above, the
legislative history of the FSIA provides that implicit waivers are generally
found only when a foreign state has done one of the following:  (1) agreed to arbitration in another country;
(2) agreed that a contract is governed by the law of a particular country; or
(3) filed a responsive pleading in a case without raising the defense of sovereign
immunity.  H.R. Rep. No. 1487, 94th
Cong., 2d Sess. 18 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6617;
S.Rep. No. 1310, 94th Cong., 2d Sess. 18 (1976).  Courts have been reluctant to stray beyond
these examples when considering claims that a nation has implicitly waived its
defense of sovereign immunity.  Aquamar,
S.A., 179 F.3d at 1291 n. 24; Tamimi, 176 F.3d at 278-79; Princz,
26 F.3d at 1174; Rodriguez, 8 F.3d at 287; Frolova, 761 F.2d at
377.  In this case, the parties agree
that neither the first nor the second examples apply; rather, the dispute
centers on the third example and what China Oil said in the letters and what
conduct it took over the course of the litigation.  We now look to the letters China Oil sent to
the court.

1. 
The Letters

After the Lins filed suit, a China
Oil representative sent five letters to the trial court from China.  China Oil contends these letters are not
responsive pleadings and, even if they can be characterized as responsive
pleadings, the letters do not reflect a conscious decision by China Oil to participate
in the litigation.  Therefore, they
claim, there is no waiver of immunity. 
In response, the Lins argue the letters are responsive pleadings under
the Federal Rules of Civil Procedure and China Oil=s failure to assert sovereign
immunity in the letters constitutes a waiver of the defense.  Specifically, the Lins contend the letters
are responsive pleadings under rule 8 of the Federal Rules of Civil Procedure
because they contain both factual denials and affirmative defenses.  See Fed.
R. Civ. P. 8(b), (c).  








The Lins point out that in the first
letter, China Oil denied all of the following: 
(1) that the Lins were proper parties to the suit because it Anever made any joint-investment with
Mr. & Mrs. Lin;@ (2) that it had breached the joint venture agreementBrather, Europamerica had; (3) that it
had divested Europamerica of its 50% interest in Huanmei; and (4) that the
joint venture arrangement was to be performed in the United States.  Moreover, the Lins argue, China Oil
essentially put forth a general denial by broadly stating that the Lins Adid not disclose the factual course
and backgrounds of the disputes@ and then providing an extensive factual discussion. 

Similarly, in the second letter, the
Lins points out that China Oil again provided a prolonged factual discussion
controverting facts alleged by the Lins in the petition.  Attached to the second letter are several
statements and declarations supporting the statements made in the letter.  The third letter also contained denialsBspecific and generalBof the claims asserted by the
Lins.  For example, in the third letter,
the China Oil representative stated Athe alleged fraud [asserted by the
Lins] is sheer nonsense.@  The representative
also accused the Lins of lying to the court. 
The final two letters repeat many of the same denials contained in the
first three.  

Finally, the Lins point out that more
than one of the letters assert affirmative defenses, specifically failure to
arbitrate and improper service.  Thus,
according the Lins, the assertions in the letters, i.e., the factual
allegations, denials, and affirmative defenses, constitute a waiver of
sovereign immunity under the FSIA.  

However, as China Oil points out, the
letters, contain more than factual assertions, denials, and defenses.  When considered in their entirety, the
letters establish that China Oil consistently asserted its immunity from
suit.  For example, in the first
paragraph of the first letter sent by China Oil to the trial court, the
representative from China Oil wrote:  

We obtain a copy of Original Petition of Mr. &
Mrs. Lin from one of our staff.  What
before you is a document from China Oil and Gas Pipeline Bureau (COGPB) for
dismissal of the subject case.  COGPB
hereby declared solemnly that this document does not constitute any kind of
acceptance of jurisdiction by your court.  [sic]

(emphasis added)








Throughout the letters, this position
is reiterated.  We recognize that in the
letters China Oil linked its claim of lack of jurisdiction to the existence of
an arbitration clause requiring arbitration in China.  We further recognize that a motion to dismiss
is not the proper vehicle for asserting a failure to arbitrate pursuant to an
arbitration agreement, see 5A Wright and Miller, ' 1350 (2d ed.), and that the
existence of an arbitration clause does not divest a court of jurisdiction over
the action.  See Bionumerik
Pharmaceuticals, Inc. v. Nair, No. Civ. A.SA-99-CA1302FB, 2000 WL 33348187,
at *1 (W.D. Tex. March 22, 2000) (citing New Process Steel Corp. v. Titan
Indus. Corp., 555 F. Supp. 1018, 1020 (S.D. Tex. 1993)).  Nevertheless, in each letter, China Oil
insisted it was not amenable to suit in the United States.  Accordingly, whatever the stated reason,
China Oil always maintained it was not subject to the jurisdiction of the
courts of the United States.  As we have
noted,  courts rarely find that a nation
has waived its sovereign immunity without strong evidence that the
foreign sovereign intended to waive.  Sampson,
250 F.3d at 1150; Princz, 26 F.3d at 1174; Rodriguez, 8 F.3d at
287.  Courts have found an implicit
waiver only when waiver was unmistakable. Shapiro, 930 F.2d at
1017.  As stated by one court, ACongress anticipated, at a minimum,
that waiver would not be found absent a conscious decision to take part in the
litigation.@ 
Drexel Burnham Lambert Group, Inc. v. Committee of Receivers for
Galardi, 12 F.3d 317, 327 (2d Cir. 1993) (quoting Frolova, 761 F.2d
at 378).[5]









We find the case of Haven v.
Polska, 215 F.3d 727 (7th Cir. 2000) instructive and persuasive.  In that case, Haven and Welbel (collectively AHaven@) brought suit in the United States
against the Republic of Poland and the State Treasury of Poland (collectively APoland@) seeking the return of property
allegedly belonging to them and their families. 
Id. at 730.  They claimed
the property was improperly seized by the Polish government after World War
II.  Id.  After the suit was filed, the Polish
Consulate in Chicago delivered a letter to the district court expressing the
Polish Ministry of Justice=s view that service was improper.  Id. 
The letter did not raise the issue of immunity.  Id. at 731.  After the letter was sent, Poland filed a
motion to dismiss this case on grounds of sovereign immunity.  Id. at 730.  

Haven argued Poland had waived
immunity based on the letter delivered to the district court by the Polish
Consulate.  Id. at 731.  The district court held the letter was not a
responsive pleading; this finding was affirmed by the Seventh Circuit.  Id. at 733.  In reaching its decision, the Seventh Circuit
found that its holding was consistent with Congress= requirement that waiver on the part
of foreign sovereigns be knowing:  

Congress anticipated, at a minimum that waiver would
not be found absent a conscious decision to take part in the litigation and a
failure to raise sovereign immunity despite the opportunity to do so.  The case law evidences a reticence to find a
waiver from the nature of a foreign state=s
participation in litigation.  

Id. at 733 (quoting Frolova, 761 F.2d at 378).  According to the Seventh Circuit, Poland=s letter objecting to the adequacy of
service was not a conscious decision to take part in the litigation; rather, it
was an indication by Poland that it did not intend to participate in the
litigation.  Id.  Thus, the court held, Poland=s letter did not waive sovereign
immunity.  

Though the court=s decision in Haven was based,
in part, on its determination that the letter did not constitute a responsive
pleading under rule 7 of the Federal Rules of Civil Procedure, the court=s reasoning clearly establishes that
the intent of the document alleged to be a responsive pleading is determinative
on the issue of waiver.  See id. at
732-33.  Here, the letters sent by the
China Oil representative to the trial court do not establish a conscious
decision to take part in the litigation; indeed, the letters all show that
China Oil did not intend to participate in the litigation.  

Thus, because (1) we are to narrowly
construe the waiver exception and its examples, and (2) the letters fail to
evince a conscious intent to take part in the litigation, we cannot say that
the letters, even if considered responsive pleadings under the federal rules,
waived China Oil=s immunity under the FSIA; at no point did they express a
conscious decision or intent by China Oil to take part in the suit filed by the
Lins or indicate China Oil=s amenability to suit in the United States.  








2. 
China Oil=s Conduct

The Lins also argue that China Oil=s conduct over the course of the
litigation supports a finding of waiver. 
Specifically, the Lins focus on China Oil=s failure to assert immunity until Aits strategy of pro se persuasion
failed,@ and a judgment was entered.  A similar argument was rejected by the Fifth
Circuit in Rodriguez.  8 F.3d at
289-90.  In Rodriguez, an
Ecuadorian sailor was injured while fighting a fire aboard a ship owned by
Transnave, a state naval entity of Ecuador. 
Id. at 286.  He was treated
at a Hawaiian port and then returned to Ecuador.  Id. 
Later, Rodriguez, while serving on another Transnave vessel, developed
health problems and when the vessel called in the Port of Houston, he
disembarked to receive medical treatment. 
Id.  Rodriguez then filed
suit against Transnave in a Texas state court claiming personal injury damages
under the Jones Act and the general maritime law of the United States.  Id. 
The cased was removed to federal court. 
Id.  

Ultimately, Transnave filed a motion
to dismiss based upon sovereign immunity under the FSIA, which the trial court
denied.  Id. at 286-87.  The trial court found Transnave had
implicitly waived its right to immunity under the FSIA because it had
participated in discovery and trial preparation for two years before filing the
motion to dismiss.  Id. at
289.  The Fifth Circuit found the trial
court had erred in finding waiver on this basis.  Id. 
In reaching this decision, the Fifth Circuit relied on Canadian
Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A., 727 F.2d 274 (2d
Cir. 1984).  In that case, the Second
Circuit upheld the district court=s finding that sovereign immunity was
not waived, even though the defendant never filed a responsive pleading, but
instead filed several motions that did not assert sovereign immunity and did
not file a motion to dismiss on the basis of sovereign immunity until more than
two years after the complaint was first filed. 
Canadian Overseas, 727 F.2d at 277-78.  In both cases, the courts noted that federal
courts have been reluctant to base a finding of waiver on the nature of a
foreign state=s participation in litigation.  Rodriguez, 8 F.3d at 289; Canadian
Overseas, 727 F.2d at 278; see also Haven, 215 F.3d at 733 (quoting
Frolova, 761 F.2d at 377) (AThe case law evidences a reticence to find a waiver from the
nature of a foreign state=s participation in the litigation.@). 









In this case, China Oil=s participation in the litigation was
limited to sending five letters to the trial court over five months.  Importantly, as we have noted, in each of
these letters, China Oil challenged the court=s authority to decide the case.  We find that this participation is legally
insufficient to support a finding of waiver under the FSIA and the cases
interpreting it.  

The three cases relied upon by the
Lins to support their argument that China Oil=s conduct over the course of the
litigation waived immunity are distinguishable. 
In Raji v. Gank Sepah-Iran, a case from the New York state court,
the trial court held that a Aforeign sovereign cannot invoke immunity with respect to the
execution of a judgment when it discovers it has lost the cause.@ 
529 N.Y.S.2d 420, 422 (N.Y. Sup. Ct. 1988).  Raji is inapplicable because the
foreign sovereign filed an answer and a counterclaim and then waited until
after a full trial on the merits to assert immunity under the FSIA.  Id. 


A similar failure to timely assert
immunity occurred in Barragan v. Banco BCH, a case from the California
state court.  188 Cal. App.3d 283 (Cal.
Ct. App.), rev. denied, (Cal. 1987). 
In that case, however, the sovereign did not assert immunity until it
filed a motion to vacate the entry of the default judgment.  Id. at 295.  This was six months after it had filed a
proposed answer, which raised only res judicata, and a motion to set aside the
default judgment.  Id.  Similarly, in Sea Lift, Inc. v. Refinadora
Costarricense De Petroleo, S.A., 601 F. Supp. 457, 465-66 (S.D. Fla. 1984),
rev=d on other grounds, 792 F.2d 989 (11th Cir. 1986), the
foreign sovereign waited until the closing argument of trial to assert
immunity, and thus, the trial court found the defense was waived.  In short, in all three cases the sovereign
engaged in litigationCeven to the point of going to trialCbefore asserting immunity.  The actions taken by China Oil and its
conduct in this litigation do not rise to this level of activity.








Accordingly, we hold the trial court
abused its discretion in denying China Oil=s motion to dismiss based upon a
finding that it waived immunity under the FSIA. 
Neither the letters nor China Oil=s conduct show a conscious decision
to participate in the litigation, an intention to waive immunity, or a desire
to subject itself to the jurisdiction of the courts of the United States.  

B. 
Commercial Activities Exception

China Oil has also argued in its
petition that the trial court abused its discretion in rejecting immunity based
on the commercial activities exception to the FSIA.[6]  However, mandamus is not appropriate to
resolve this issue at this time.  This
ground was raised in the trial court, but, the trial court did not base
its decision on this ground.  Rather, in
its order of October 25, 2001 (affirmed by the order of January 25, 2002), the
trial court relied specifically and exclusively on the waiver provision of the
FSIA and its determination that no valid arbitration clause existed. 

Moreover, the parties agree the trial
court did not base its order on the commercial activities exception.  Nevertheless, the Lins argue this Court
should address whether China Oil is immune under that exception.  In support of this argument, the Lins contend
we may uphold the order on any ground raised below.  They claim that China Oil acknowledges this
by Acontesting the applicability of this
exception in its petition.@  We disagree.  

When the trial court determined that
China Oil was subject to the jurisdiction of the Texas courts under the FSIA,
its decision was limited to the waiver exception.  This is borne out by the trial court=s order which limited its finding to
the waiver exception.  The trial court
did not rule upon the applicability of the commercial activities
exception.  We find that in this
situation, mandamus is not appropriate. 
The law is clear that courts should issue mandamus only when there is no
other adequate remedy at law.  FirstMerit
Bank, N.A., 52 S.W.3d at 753; Daisy Mfg. Co., 17 S.W.3d at 658.  Because the trial court has not ruled on the
commercial activities exception, there is an adequate legal remedy, i.e., both
China Oil and the Lins can present argument and seek relief in the trial court
on this exception.  We would be acting
prematurelyCand without authorityCif we were to rule on this issue
before allowing the trial court to rule on it.








In support of their argument that we
should address this claim, the Lins cite Point Lookout West, Inc. v. Whorton,
742 S.W.2d 277 (Tex. 1987).  In that
case, the supreme court held that in the absence of any findings of fact and
conclusions of law, it was the appellant=s burden to show the trial court=s judgment was not supported by any
legal theory raised by the evidence.  Id.
at 279.  Thus, based on this holding the
Lins argue China Oil must show that the trial court=s decision to deny the motion to
dismiss was erroneous on each ground presented. 
The Whorton reasoning does not apply here.  

In Whorton, a trial was held
before the court and neither side requested findings of fact or conclusions of
law.  742 S.W.2d at 278.  The supreme court held, and we agree, that
after a bench trial, if no findings and conclusions are requested or
filed, all questions of fact are presumed found in support of the judgment and
the judgment must be affirmed if it can be upheld on any legal theory raised by
the evidence.  While this is the
appropriate standard of review on appeal following a bench trial with no
requested findings or conclusion, this is not the standard of review in a
mandamus proceeding.  

Accordingly, we decline to address
the applicability of the commercial activities exception. The parties are free
to raise this issue and seek relief in the trial court.  

C. 
Arbitration Provision

In addition to claiming the trial
court lacked jurisdiction under the FSIA, China Oil also asserted in the trial
court that the Lins= were bound to arbitrate their claims under the terms of the
joint venture agreement  Article 57 of
the joint venture agreement states the following:  

All disputes arising from the implementation of, or in
connection with, this Contract shall be resolved by the parties through
friendly consultation.  If a dispute
cannot be resolved through consultations, the dispute shall be submitted to the
China International Economic and Trade Arbitration Commission in accordance
with the arbitration rules.  The arbitral
awards shall be final and binding on both parties.  The costs of arbitration shall be borne by
the losing party.  








China Oil argues here that the Lins
are bound to arbitrate; the Lins contend they are not required to
arbitrate.  The trial court found China
Oil Afailed to establish a valid
arbitration clause to be enforced under the Convention of the Recognition and
Enforcement of Arbitral Awards.@  However, the trial
court cannot enter an order regarding arbitration until it decides whether the
commercial activities exception applies. 
(If the commercial activities exception does not apply, the court has no
jurisdiction over China Oil and cannot order it to arbitration.)  Because the court has not ruled on the
commercial activities exception, it abused its discretion in ordering the
parties to arbitrate.  That portion of
the order must be vacated.[7]


VII. 
CONCLUSION

In conclusion,
having found the trial court abused its discretion in (1) finding that China
Oil waived its immunity under the FSIA on the waiver exception and (2) ordering
the parties to arbitrate without ruling on the applicability of the commercial
activities exception, we conditionally grant the petition for writ of
mandamus.  The trial court is ordered to
vacate its orders of October 25, 2001, and January 25, 2002.  The writ will issue only if the trial court
refuses to vacate the orders of October 25, 2001, and January 25, 2002, which
deny China Oil=s Amended Plea to the Jurisdiction and Motion to
Dismiss.  

 

 

 

/s/        Wanda McKee Fowler

Justice

 

 

Petition
Conditionally Granted and Opinion filed August 22, 2002.

Panel
consists of Justices Hudson, Fowler, and Edelman. 

Publish
B Tex. R.
App. P. 47.3(b).

 











[1]              Two
other American partiesBJack L. Dyer and Knapp Polly Pig, Inc.Bsigned the joint venture memorandum.  However, at some point, Dyer and Knapp Polly
Pig withdrew.  There is a dispute as to
whether the withdrawal was before or after Huanmei was officially formed.  The president of Knapp Polly Pig, Kenneth
Knapp, avers he withdrew before the joint venture was actually formed; however,
his signature appears on the final joint venture contract.  Mr. Knapp claims the signature is a
forgery.  He also denies transferring any
company stock to the Lins and contends the documents produced by China Oil
showing a stock transfer are also forgeries. 






[2]           The
Lins give specific reasons for this position but, again, we will not list these
details here because any ruling by this court on the commercial activities
exception and arbitration would be premature.





[3]              The
FSIA broadly defines Aforeign state@ to Ainclude[ ] a political subdivision of a foreign state
or an agency or instrumentality of a foreign state.@  28 U.S.C. ' 1603(a).  An Aagency or instrumentality of a foreign state@ includes any entity: 
(1) which is a separate legal person, corporate or otherwise, and (2)
which is an organ of a foreign state or political subdivision thereof, or a
majority of who shares or other ownership interest is owned by a foreign state
or political subdivision thereof, and (3) which is neither a citizen of a state
of the United States nor created under the law of any third country.  Id. at '
1603(b).  Here, China Oil is a
wholly-owned subsidiary of China National Petroleum Company.  China National is wholly owned by the People=s Republic of China. 
Thus, China Oil qualifies as a Aforeign
state@ under the FSIA. 
The parties do not dispute that China Oil is a Aforeign state@ and the
FSIA applies.  The only issue in this
case is whether the FSIA authorizes the trial court to exercise jurisdiction
over China Oil under the exceptions to the FSIA.  





[4]              The
FSIA also contains other exceptions that do not apply here.  See 28 U.S.C. '' 1605(a)(3) (certain actions in which rights in
property taken in violation of international law are in issue), 1605(a)(4)
(actions involving rights in real estate and in inherited and gift property
located in United States), 1605(a)(5) (actions for certain noncommercial torts
within United States), 1605(b) (certain actions involving maritime liens), and
1607 (certain counterclaims).  





[5]           We recognize, as the Lins assert, that the Aconscious decision@
language used by the courts in Drexel Burnham and Frolova does
not specifically appear in the FSIA or its legislative history; however, this
interpretation is completely consistent with the decades-old policy of
preserving a foreign sovereign=s immunity except in those instances in which the
sovereign intended to subject itself to the jurisdiction of the courts of this
country.  





[6]              China
Oil states in its petition that it is addressing this issue only because the
Lins Amay seek to justify the trial court=s decision based on the commercial activities
exception.@  





[7]           We express no opinion on the merits regarding the
validity or enforceablility of the arbitration provision.  Any determination at this pointCother than our finding that the trial court cannot
rule on this matter yetCis premature.